MARCIA M. ROUBIK, Petitioner-Appellant and Cross-Appellee, v. MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., *et al.*, Respondents-Appellees and Cross-Appellants.

First District (3rd Division)   No. 1—94—2774

Opinion filed May 1, 1996.—Rehearing denied January 3, 1997.

Paul D. Carrier, of Chicago, for petitioner.

Peter A. Cantwell and Stephen F. Boulton, both of Chicago, for respondents.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Tanya Solov, Special Assistant Attorney General, of counsel), for *amicus curiae*.

JUSTICE TULLY delivered the opinion of the court:

Petitioner, Marcia M. Roubik, appeals from an order of the circuit court of Cook County denying her petition to vacate a National Association of Securities Dealers (NASD) arbitration panel ruling that the law of New York precludes an award of punitive damages in this case and granting the cross-petition of respondents, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), Larry H. Lovitsch and Thomas R. Valaika, to confirm said ruling. Petitioner also appeals from the circuit court's denial of her alternative petition that she be granted a jury determination of any claim held to be nonarbitrable. Respondents cross-appeal from the circuit court's award of interest for the period of time after the entry of the arbitration award but prior to the circuit court's entry of a confirming judgment. The Illinois Secretary of State's Securities Department has filed an *amicus* brief in this case. Jurisdiction is vested in this court pursuant to Supreme Court Rule 301. 155 Ill. 2d R. 301.

For the reasons which follow, we affirm in part and reverse in part and remand with directions.

In October of 1985, petitioner and her now-deceased mother had a joint account with Merrill Lynch having a total value at that time of around $787,000. Respondents, in essence, assert that Lovitsch and Valaika, brokers employed for Merrill Lynch, a securities brokerage, "churned" the account in order to generate excessive commissions. According to petitioner, this churning of the account and its attendant brokerage fees accompanied with mismanagement of the investment portfolio caused a loss of approximately $1.67 million from 1985 through 1988.

Petitioner subsequently initiated arbitration proceedings against respondents as was called for in the "Customer Agreement" she signed with Merrill Lynch. Petitioner sought both compensatory damages and punitive damages. The arbitration panel awarded petitioner $500,000 in compensatory damages. However, the panel did not award punitive damages in spite of its finding that such damages were appropriate in this case. The panel based this decision on the fact that the Customer Agreement contained a provision that stated that the "Agreement and its enforcement shall be governed by the laws of the State of New York." In 1976, the New York Court of Appeal decided that, in New York, the power to award punitive damages is limited to judicial tribunals and may not be exercised by arbitrators. See *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976). Thus, the arbitrators concluded that, as New York law applied to the agreement, the *Garrity* rule precluded their awarding punitive damages to petitioner.

Petitioner subsequently filed an action in the circuit court seeking enforcement of the arbitrators' $500,000 compensatory award as well as reversal of the panel's determination that punitive damages were unavailable. The circuit court affirmed *in toto* the arbitration panel's award of compensatory damages and determination that punitive damages were not permitted under the terms of the Customer Agreement. The circuit court also awarded petitioner prejudgment interest from the time period after the entry of the arbitration award but prior to the circuit court's entry of a confirming judgment. In so doing, the circuit court relied heavily on the decision of the United States Court of Appeals for the Seventh Circuit in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713 (7th Cir. 1994), which has, subsequent to the filing of the appellate briefs in this case, been reversed by the United States Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1213 (1995).

Petitioner argues that the circuit court erred in confirming the arbitrators' decision that they were precluded by New York law from awarding punitive damages in this case. We agree. We note that, as this case involves purely legal questions, our review of it is *de novo*. *Benedictine Sisters of the Sacred Heart v. Department of Revenue*, 155 Ill. App. 3d 325 (1987); see also T. O'Neill & S. Brody, *Taking Standards of Appellate Review Seriously: A Proposal to Amend Rule 341*, 83 Ill. B.J. 512 (1995).

As respondents noted in their brief, "[t]he Customer Agreement in the case at bar is quite parallel to that construed in *Mastrobuono*." We agree and believe the Supreme Court's recent decision in *Mastrobuono* is directly on point and controlling of this case.

In *Mastrobuono*, two clients opened a securities trading account with a securities dealer in 1985 by executing, in Illinois, the broker's standard-form client agreement. Under the agreement's choice-of-law provision, the agreement was to be governed by the "laws of the State of New York." The agreement's arbitration provision authorized arbitration in accordance with the rules of (1) NASD, or (2) either the New York Stock Exchange or the American Stock Exchange. The agreement itself contained no express reference to claims for punitive damages. In 1989, the clients filed an action in the United States District Court for the Northern District of Illinois against the brokerage and several individuals. The district court stayed the court action and compelled arbitration pursuant to NASD rules. A NASD arbitration panel ruled in favor of the clients and awarded both compensatory and punitive damages. The district court vacated the award of punitive damages and in doing so held that the arbitration

panel had not been authorized to award punitive damages under New York's *Garrity* rule. The seventh circuit affirmed the district court. The Supreme Court reversed both the seventh circuit and the district court.

In reversing the lower courts, the Supreme Court held that the punitive damages award was enforceable as within the scope of the client agreement because (1) the agreement's arbitration provision strongly implied that an arbitral award of punitive damages was appropriate; (2) the agreement's choice-of-law provision was not, in itself, an unequivocal exclusion of punitive damages claims but, at most, introduced an ambiguity into the arbitration agreement; (3) in light of such doubt or ambiguity, it is improper to impute to the clients an intent to give up an important substantive right; and (4) a reading of the choice-of-law and arbitration provisions as together expressing an intent to preclude a punitive damages award would violate the principle that a document should be read to give effect to all of the document's provisions and to render such provisions consistent with each other.

■ In both *Mastrobuono* and the case *sub judice*, the client agreements contained almost identical arbitration and choice-of-law provisions selecting New York law. Both standard-form contracts, which contain no express reference to punitive damage claims, elect to pursue arbitration in accordance with the rules of NASD or either the New York Stock Exchange or the American Stock Exchange. The NASD rules clearly allow for the award of punitive damages. Thus, we see no distinction between the two cases that would cause us to depart from the Supreme Court's reasoning that the choice-of-law provision merely represented a convenient substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship (*Mastrobuono*, 514 U.S. at 59, 131 L. Ed. 2d at 85, 115 S. Ct. at 1217) and *not* an unequivocal exclusion of punitive damages (*Mastrobuono*, 514 U.S. at 60, 131 L. Ed. 2d at 86, 115 S. Ct. at 1217).

Moreover, we do not see any reason to stray from "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono*, 514 U.S. at 62, 131 L. Ed. 2d at 87, 115 S. Ct. at 1219, citing *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4, 429 N.E.2d 1203, 1205 (1981); *Graff v. Billet*, 64 N.Y.2d 899, 902, 477 N.E.2d 212, 213-14 (1984). Another cardinal rule of contract construction is that a document should be read to give effect to all its provisions and to render them consistent with one another. *Mastrobuono*, 514 U.S. at 63, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219, citing

*In re Halas*, 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964 (1984); *Crimmins Contracting Co. v. City of New York*, 74 N.Y.2d 166, 172-73, 542 N.E.2d 1097, 1100 (1989); *Trump-Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.*, 106 App. Div. 2d 242, 244, 485 N.Y.S.2d 65, 67 (1985); Restatement (Second) of Contracts § 203(a) and Comment *b*, § 202(5) (1979). Here, as was the situation in *Mastrobuono*, the brokerage house drafted the ambiguous contract and, thus, it cannot now claim the benefit of the doubt. To allow such a construction would conflict with the common law's twin policies of protecting the party who did not choose the ambiguous language and rendering contractual provisions consistent with each other. *Mastrobuono*, 514 U.S. at 62-63, 131 L. Ed. 2d at 87-88, 115 S. Ct. at 1218-19. This result is especially compelling in a situation such as we have here where "it seems unlikely that [the clients] were actually aware of New York's bifurcated approach to punitive damages, or that they had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right." *Mastrobuono*, 514 U.S. at 63, 131 L. Ed. 2d at 87-88, 115 S. Ct. at 1219. Accordingly, we find the circuit court erred in confirming the arbitrators' decision that they were precluded by New York law from awarding punitive damages. On remand, we direct the circuit court to enter an order compelling further NASD arbitration on the issue of punitive damages and staying further action in the circuit court until such arbitration proceedings can be completed.

■ Still to be considered is respondents' contention on cross-appeal that the circuit court erred in its award of interest for the period of time after the entry of the arbitration award but prior to the circuit court's entry of a confirming judgment. We cannot agree with this proposition and believe the circuit court decision was proper under section 41(h) of the NASD Code of Arbitration Procedure, which is incorporated into the Customer Agreement. Section 41(h) provides as follows:

> "(h) All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award: (i) if not paid within thirty (30) days of receipt, (ii) if the award is the subject of a motion to vacate which is denied, or (iii) as specified by the arbitrator(s) in the award. Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s)."

The transmittal letter, dated February 8, 1993, clearly references section 41 and provides for an award of interest with qualification.

Since the award was entered in Illinois and the compensatory damages award was not paid within 30 days, section 41(h) requires payment of interest from the award date until paid at the lawful rate of 9% under section 2—1303 of the Code of Civil Procedure (735 ILCS 5/2—1303 (West 1994)). Therefore, there was no error by the circuit court on this point.

In light of the foregoing, we affirm in part and reverse in part and remand this cause to the circuit court with directions.

Affirmed in part; reversed in part and remanded with directions.

RIZZI, P.J., and CERDA, J., concur.