**SMITH BARNEY, INCORPORATED,**
Plaintiff–Appellee,

v.

**Roger SARVER; Concetta Sarver,**
Defendants–Appellants.

No. 95–2285.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 22, 1996.

Decided Feb. 28, 1997.

Thomas R. Cox (briefed), Clarence L. Pozza, Jr., Miller, Canfield, Paddock & Stone, Detroit, MI, for plaintiff–appellee.

Walter L. Baumgardner (briefed), Musilli, Baumgardner, Wagner & Parnell, St. Clair Shores, MI, for Roger Sarver and Concetta Sarver.

Before: MARTIN, Chief Judge; WELLFORD and MOORE, Circuit Judges.

WELLFORD, Circuit Judge.

Roger and Concetta Sarver filed a claim for arbitration against Smith Barney, Inc. ("Smith Barney") on September 24, 1994, alleging that the securities firm Shearson Lehman Hutton ("Shearson"), predecessor of Smith Barney,[1] violated various securities acts, rules of the National Association of Securities Dealers ("NASD"), and its fiduciary duty under state common law.

The underlying dispute between the parties arose out of a purchase of $116,000 worth of TWA unsecured senior notes for the Sarvers' account on September 14, 1988. TWA eventually suffered severe financial difficulties, which significantly diminished the value of the unsecured notes. In light of this substantial decrease in value, the Sarvers contend that their broker misrepresented the inherent risk of the investment, which they claim was contrary to their clearly stated investment objectives. As a result, the Sarvers filed a claim for arbitration with the NASD seeking $70,000 in damages, plus interest and costs.

In response, Smith Barney filed a complaint in federal district court seeking injunctive relief barring arbitration on the grounds

---

1. The arbitration claim was actually filed against Shearson initially, but Smith Barney is the real party at interest since it acquired Shearson on July 30, 1993.

that, notwithstanding the factual allegations, the claim was simply not timely filed within the six-year eligibility period required by § 15 of the NASD Code of Arbitration Procedure, which had been incorporated into the contract for arbitration between the parties.[2] The Sarvers acknowledge that the purchase of the unsecured notes occurred more than six years before their claim for arbitration was filed, but they nevertheless filed a motion for summary judgment arguing that the six-year bar should be equitably tolled because Smith Barney fraudulently concealed the allegedly improper conduct of its broker.

Smith Barney countered by filing its own cross-motion for summary judgment, arguing that the eligibility period under § 15 was a substantive limit that was not amenable to equitable tolling. Although the district court disagreed with Smith Barney's legal conclusion, it nevertheless granted summary judgment in its favor because the Sarvers had failed to even attempt to show that there was a genuine issue of material fact tending to demonstrate that Smith Barney had participated in any fraudulent concealment.

Because of this failure even to put forth any evidence tending to prove their case, the Sarvers' argument on appeal is limited to the claim that the district court lacked the authority to hear and decide the issues in the first place. Specifically, plaintiffs make two arguments: first, that the court lacked subject matter jurisdiction over the dispute; and second, that even if jurisdiction existed, the arbitration contract effectively vested power in the arbitrators to determine eligibility questions, to the exclusion of the courts.

We find this case to be similar to *City of Detroit Pension Fund v. Prudential Sec. Inc.*, 91 F.3d 26 (6th Cir.1996), which was published recently after the filing of briefs in this case. Based in part on that case, and for the other reasons indicated, we reject the Sarvers' arguments and **AFFIRM** the decision of the district court.

**2.** Section 15 states:
No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the

## SUBJECT MATTER JURISDICTION

■ In its complaint, Smith Barney asserted that jurisdiction was predicated on the Federal Arbitration Act, 9 U.S.C. § 4, because absent an agreement for arbitration, there would be federal question jurisdiction under 28 U.S.C. § 1331 based on the federal securities laws. Our cases have made clear, however, that the Federal Arbitration Act does not supply an independent basis for federal jurisdiction, nor does the federal nature of the underlying claims that were submitted to arbitration. *City of Detroit Pension Fund,* 91 F.3d at 29; *see also Ford v. Hamilton Inv., Inc.,* 29 F.3d 255, 257–59 (6th Cir.1994); *In re Application of Prudential Sec. Inc.,* 795 F.Supp. 657, 658–59 (S.D.N.Y. 1992). The rights asserted by Smith Barney in this case are based simply on an interpretation of the contract to arbitrate, as opposed to the actual merits of the underlying substantive claims. *See City of Detroit Pension Fund,* 91 F.3d at 29.

For whatever reason, however, the Sarvers did not challenge Smith Barney's jurisdictional allegation below, and the district court failed to analyze the issue or state the grounds for exercising jurisdiction. Nevertheless, "[f]ederal courts are courts of limited jurisdiction ... [and] no action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. et al. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Universal Consol. Cos. v. Bank of China,* 35 F.3d 243, 247 (6th Cir.1994) ("[I]t is hornbook law that parties may not waive into or consent to subject matter jurisdiction which a federal court does not properly have by operation of Constitution and Congress."). Accordingly, a defendant's "[f]ailure to object to subject matter jurisdiction before the district court does not preclude appellate review, and we must address [the] issue...." *City of Detroit Pension Fund,* 91 F.3d at 29 (citations omitted).

act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

In view of the errors in Smith Barney's jurisdictional allegation, we might dismiss the case for want of jurisdiction. However, we may still take notice of another basis for jurisdiction. *Id.; see also Lytle v. Freedom Int'l Carrier, S.A.,* 519 F.2d 129, 132–33 (6th Cir.1975). In *City of Detroit Pension Fund,* our court recognized diversity jurisdiction despite the fact that federal question jurisdiction was erroneously claimed. Specifically, we held that:

> Assuming, arguendo, that there is no basis for federal question jurisdiction, and given the agreement by the parties that the elements of diversity jurisdiction are satisfied, the question becomes whether this court can uphold the district court's exercise of jurisdiction on a basis other than that recognized by the district court. Where there is a challenge on appeal to the subject matter jurisdiction of the district court, this court may take notice of other bases for jurisdiction.
>
> . . .
>
> Because the parties are of diverse citizenship and the requisite minimum amount is in controversy, the district court had jurisdiction under 28 U.S.C. § 1332.

91 F.3d at 29.

In this respect, the present case is virtually identical to *City of Detroit Pension Fund.* There appears to be no dispute that there exists both complete diversity of citizenship between this plaintiff and defendant and that there is a claim for more than $50,000 in damages.[3] Therefore, despite its erroneous assertion of federal question jurisdiction, and even though the complaint did not affirmatively allege diversity jurisdiction, Smith Barney did plead all of the required elements for diversity. Accordingly, we hold that federal diversity jurisdiction exists under 28 U.S.C. § 1332.

### *ARBITRABILITY OF § 15*

■ The Sarvers alleged that Smith Barney violated the securities laws, the rules of the NASD, and also its fiduciary duties. These claims go to the *merits* of the underlying dispute, but they are not presently before this court. Our task is confined to ruling on Smith Barney's more limited request for a permanent injunction enjoining the Sarvers from pursuing their claim in arbitration at all. Obviously, that injunction petition ultimately involves determining *whether* the dispute is arbitrable under the requirements of § 15 of the NASD Code of Arbitration Procedure, which may be better described as addressing the *eligibility* of the Sarvers' claims for arbitration. This issue is also not before us because the Sarvers failed to produce any evidence that their claims were indeed eligible for arbitration due to Smith Barney's *fraudulent concealment* of its broker's alleged misconduct. *Cf. City of Detroit Pension Fund,* 91 F.3d at 30 ("We need not reach the issue of whether § 15 is subject to tolling on the basis of fraudulent concealment, because the Funds did not adequately plead fraudulent concealment before the district court."). Further, the Sarvers have not even chosen to address this issue. Instead, in their arguments before this court, the Sarvers have focused solely on the issue of *who* is properly charged with deciding the eligibility issue. Specifically, they argue that the district court should not have even considered whether their claims against Smith Barney were eligible for arbitration under § 15 because the issue was for the arbitration panel to decide. This question deals with the *arbitrability* of § 15.

As a general premise, the Supreme Court has made it very clear that since arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct.

---

**3.** In its complaint, Smith Barney asserted that it was a Delaware corporation with its principal place of business in New York City, and that "upon information and belief" the Sarvers "are or were citizens of the State of Michigan ... [and] have retained a Michigan attorney to represent them before the NASD...." The complaint also made reference to the Sarvers' claim for "damages in the amount of Seventy Thousand Dollars." None of these allegations were denied in the answer submitted by the Sarvers.

1347, 1353, 4 L.Ed.2d 1409 (1960) (Brennan, J., concurring)). Notwithstanding this general presumption, the parties are ultimately in control of their own affairs since, as noted above, arbitration is essentially a matter of contractual agreement, and parties may choose to submit questions of arbitrability to an arbitrator. *See First Options of Chicago, Inc. v. Kaplan,* — U.S. —, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In light of the grave consequences that could potentially result from allowing the arbitrators to define the scope of their own power and authority, however, the Supreme Court has made clear that such an agreement must be "clear and unmistakable." *Id.* at —, 115 S.Ct. at 1924.[4]

Quoting *Litton,* our court recently reaffirmed its view that the § 15 time limitation of the NASD Code of Arbitration Procedure is generally not arbitrable. *City of Detroit Pension Fund,* 91 F.3d at 30; *see also Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, 651 (6th Cir.1993) (reasoning that since § 15 dictates whether a dispute is even "eligible" for arbitration, courts must determine whether a claim is barred by the six-year period).

### PROVISIONS THAT PLAINTIFFS ARGUE ARE "CLEAR AND UNMISTAKABLE"

■ The Sarvers press an argument heretofore not addressed by our court in a published decision—namely that § 35 of the NASD Code of Arbitration Procedure, and also to a lesser extent § 1, manifests the type of "clear and unmistakable" intent necessary to require submission of the eligibility determination to the arbitrators. We join a majority of circuits in holding that in cases of this type, the eligibility determination of the Sarvers' claims cannot be submitted to arbitration notwithstanding both provisions since neither provides clear and unambiguous language to the contrary. *See First Options,* — U.S. at —, 115 S.Ct. at 1924.

Recently, in *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 78 F.3d 474 (10th Cir.1996), the Tenth Circuit considered the precise question involved here, and after an extended discussion of the interaction between § 15 and § 35, joined the Third, Sixth, Seventh and Eleventh Circuits in holding that there was no "clear and unmistakable" intent to subject the question of arbitrability to arbitration. *Id.* at 478.[5] Specifically, the court stated that:

> [S]ection 35 states merely that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code." It says nothing specific about whether the arbitrator or the court should decide whether a claim is arbitrable under § 15. Furthermore, it is well established under the generally applicable rules governing contract interpretation that specific provisions, like § 15, take precedence over more general provisions, like § 35. *Mutual Life Ins. Co. v. Hill,* 193 U.S. 551,

---

**4.** The Sarvers seem to argue that the Supreme Court's recent decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), somehow undermines this conclusion. In *Mastrobuono,* the Court was confronted with an arbitration agreement that contained two potentially conflicting provisions, one that was clearly in favor of arbitration of a particular substantive issue and one that was susceptible to another contrary interpretation. *Id.* The Court resolved the dilemma by choosing a pro-arbitration interpretation, holding that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* at —, 115 S.Ct. at 1218 (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989)). In a later case decided the same term as *Mastrobuono,* however, the Supreme Court made clear that this pro-arbitration policy is inapplicable to the issue we are considering here. Specifically, in *First Options,* — U.S. at —, 115 S.Ct. at 1920, the Court explained that the law treats ambiguity about the question of *who* should decide arbitrability differently than it treats the question *whether* a particular dispute is arbitrable. *Id.* at —, 115 S.Ct. at 1924. When considering the former, as in this case, the policy is in favor of a presumption of *non*-arbitrability unless there is a "clear and unmistakable" agreement to the contrary. *Id.* ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.").

**5.** *Cogswell* acknowledged minority positions taken in *Smith Barney v. Boone,* 47 F.3d 750 (5th Cir.1995), and *FSC Sec. v. Freel,* 14 F.3d 1310 (8th Cir.1994), but nevertheless rejected them, as we do.

558, 24 S.Ct. 538, 540, 48 L.Ed. 788 (1904) ("The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specifically directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included"); *Corso v. Creighton Univ.*, 731 F.2d 529, 533 (8th Cir.1984) ("It is ... axiomatic that where general and specific terms in a contract may relate to the same thing, the more specific provision should control"); 3 A. Corbin, *Corbin on Contracts* § 547, at 176 (1960).

*Id.* at 480–81.

In *Merrill Lynch, et al. v. Cohen*, 62 F.3d 381 (11th Cir.1995), another recent case, the Eleventh Circuit concurred in this conclusion:

> We hold that section 35 is not "clear and unmistakable evidence" of the parties' intent to allow the arbitrator to determine the timeliness of the claim. *See [Edward D. Jones & Co. v.] Sorrells*, 957 F.2d [509] at 514 n. 6 [(7th Cir.1992)] ("we do not believe that [§ 35] is a clear and unmistakable expression of the parties' intent to have the arbitrators, and not the court, determine which disputes the parties have agreed to submit to arbitration."). Section 35 is a general contract term which gives the arbitrator the power to interpret the NASD Code. Section 15, by contrast, is a specific provision, which delineates the claims that are untimely, and thus not eligible for arbitration. "When general positions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control." *Goldberg v. Bear, Stearns & Co., Inc.*, 912 F.2d 1418, 1421 (11th Cir.1990). We conclude that, at most, section 35 creates an ambiguity as to who determines arbitrability. Because an ambiguity is insufficient to override the presumption that courts determine arbitrability, *see Kaplan*, —— U.S. at ——, 115 S.Ct. at 1924, we conclude that the district court must determine whether the dispute ... is arbitrable.

*Id.* at 384. We agree with the reasoning in these cases. Moreover, we note that a panel of this court likewise adopted this position in an unpublished *per curiam* opinion in *Securities Serv. Network, Inc. v. Cromwell*, No. 94–5778, 1995 WL 456374 (6th Cir. Aug. 1, 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996).

■ Turning now to § 1, the Sarvers emphasize the language in that provision that states that "[t]his Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of *any* dispute, claim, or controversy arising out of or in connection with the business of any member of the Association...." (Emphasis added). As in the case of § 35, however, we are not convinced that § 1 demonstrates "clear and unmistakable" evidence that the parties intended to have the arbitrators decide eligibility issues. As the court stated in *Cogswell:*

> Ms. Cogswell draws our attention to § 1 of the NASD Code, which provides the Code "is prescribed ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ... between or among members or associated persons and public customers, or others." According to Ms. Cogswell, § 1, not § 15, controls whether her claims are arbitrable, and because her claims fall within § 1, the district court was correct to grant her petition and allow the arbitrator to determine whether § 15 applies. We disagree for three reasons. First, § 1 and § 15 deal with entirely different issues; the former determines whether the claim is arbitrable in light of its subject matter, while the latter determine whether the claim is arbitrable in light of when it was filed. Because they address different issues, they do not conflict, and neither trumps the other. Second, even if § 1 and § 15 conflicted, § 15 would control because it is specific rather than general. Finally, and most importantly, § 1, like § 35, is by no means "clear and unmistakable" evidence the parties intended to allow the arbitrators to determine whether § 15 applies. See *First Options*, —— U.S. at ——, 115 S.Ct. at 1924.

*Cogswell,* 78 F.3d at 481; *but see Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193 (2d Cir. 1996) (holding that the language of § 1 is "clear and unmistakable"). Again, we agree with the reasoning of the court in *Cogswell.* The placement and language of § 1 is simply not "clear and unmistakable" evidence that the parties intended to allow the arbitrators to determine whether § 15 applies.

### *CONCLUSION*

In sum, we hold that the Sarvers have failed to show that there is any "clear and unmistakable" contractual evidence requiring that we forego the judicial role of protecting parties from being forced to arbitrate issues that they did not agree to arbitrate. Because we also find that the district court had subject matter jurisdiction, we **AFFIRM** the district court's decision to grant summary judgment in favor of Smith Barney.