(No. 82752.—

MARCIA M. ROUBIK, Appellee, v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., *et al.*, Appellants.

*Opinion filed February 20, 1998.—Rehearing denied March 30, 1998.*

374

HEIPLE, J., dissenting.

Cantwell & Cantwell, of Chicago (Peter A. Cantwell and Stephen F. Boulton, of counsel), for appellants.

Fishman & Merrick, P.C., of Chicago (Paul D. Carrier, of counsel), for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This appeal arises from a petition filed in the circuit court of Cook County by the claimant, Marcia Roubik, to confirm in part and vacate in part an arbitration award entered by a panel of the National Association of Securi-

ties Dealers (NASD) on February 5, 1993. The arbitration panel ordered the respondents, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), Larry H. Lovitsch and Thomas R. Valaika, to pay the claimant $500,000 in compensatory damages. The panel denied the claimant's request for punitive damages. The claimant sought an order from the circuit court confirming the award of compensatory damages and setting aside the denial of punitive damages. The respondents filed a counterpetition seeking confirmation of the arbitration award in its entirety. The circuit court confirmed the arbitration award in its entirety. On the claimant's appeal, the appellate court reversed in part, holding that the arbitration panel improperly refused to award punitive damages. 285 Ill. App. 3d 217 (1996). We accepted the respondents' petition for leave to appeal. 166 Ill. 2d R. 315(a).

## FACTS

In October 1985, the claimant and her now deceased mother executed a customer agreement with Merrill Lynch, a securities brokerage firm, opening a joint cash management account. The agreement contained a provision entitled "Agreement to Arbitrate Controversies," which provided that:

> "it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Directors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect."

The customer agreement also provided that "this agreement and its enforcement shall be governed by the laws of the State of New York." Respondents Lovitsch and Valaika are employees of Merrill Lynch who handled the claimant's account.

On January 14, 1991, the claimant filed a statement

of claim with the NASD charging the respondents with making unauthorized and unsuitable trades in her account for the purpose of maximizing the respondents' fees and commissions and other misconduct. The claimant alleged that respondents were guilty of willful misrepresentations and omissions, fraud, breach of contract, negligence, breach of fiduciary duty and violations of the rules and regulations of the NASD, the New York Stock Exchange and the American Stock Exchange. The claimant sought recovery of actual damages of not less than $900,000. The claimant also sought an award of punitive damages against the respondents.

The respondents filed a joint statement of answer and executed NASD uniform submission agreements for the arbitration. The submission agreement provided that the undersigned parties:

> "hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization."

The arbitration proceeded in the Midwest Regional Arbitration Office of the NASD in Chicago. At the request of the arbitration panel, the parties provided briefs on the issue of the authority of arbitrators to award punitive damages. The arbitration panel received exhibits and heard several days of testimony. The panel issued its award on February 5, 1993. The panel found the respondents guilty of: (1) lack of supervision; (2) churning; and (3) violation of suitability rules. The panel awarded the claimant $500,000 in compensatory damages. The award further stated that the arbitrators "find that this misconduct was such that punitive damages should be awarded. However, the panel believes that the law of New York, the forum of the parties, precludes such an award."

On April 5, 1993, the claimant filed a petition in the circuit court to confirm that part of the arbitration award granting compensatory damages and to set aside that part of the award denying punitive damages. The claimant argued that the arbitrators' decision on the punitive damages issue must be set aside because it was contrary to Illinois public policy favoring punitive damages in the securities setting. The claimant asked that the claim be returned to the arbitration panel for entry of an award of punitive damages. In the alternative, the petition asked that the court retain jurisdiction for a jury determination on the punitive damages issue. The petition further asked for interest to be awarded on the compensatory award at the statutory rate of 9% from February 5, 1993. The respondents filed a counterpetition to confirm the arbitration award in its entirety, without interest.

On July 22, 1994, the circuit court issued its order confirming the arbitration award. In particular, the circuit court found that the arbitrators correctly ruled that they did not have the authority to award punitive damages. Further, the court found that Illinois public policy does not favor punitive damages. The court awarded the claimant interest at the statutory rate of 9% on the compensatory damages award from February 5, 1993.

The claimant appealed to the appellate court. The appellate court affirmed the award of compensatory damages and the interest on that award. Relying on the United States Supreme Court decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995), the appellate court reversed the circuit court's decision confirming the arbitrators' ruling that they were without authority to award punitive damages. The appellate court remanded the cause to the circuit court with directions to enter an or-

der compelling further NASD arbitration on the issue of punitive damages. 285 Ill. App. 3d 217.

We granted the respondents' petition for leave to appeal. The parties do not raise any issues in this court regarding the award of compensatory damages or the interest award.

## ANALYSIS

The question presented in this appeal is whether the arbitration panel's decision on the issue of punitive damages should be set aside. As noted, the parties' contract provided that it was to be governed by the laws of the State of New York. It is undisputed that New York law prohibits arbitrators from awarding punitive damages. See *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976). The respondents argued before the arbitration panel that, pursuant to the explicit terms of the contract, New York law applied and prohibited the arbitrators from awarding punitive damages. The arbitration panel agreed that New York law governed and that they were therefore without authority to award punitive damages. At the time the arbitrators issued their award, several courts had ruled on the effect on the availability of punitive damages of a New York choice-of-law provision in an arbitration agreement, with conflicting results. The United States courts of appeals for the Seventh and Second Circuits had held that the inclusion of a New York choice-of-law clause precluded an arbitration panel from awarding punitive damages. See *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 517-19 (2d Cir. 1991); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338-39 (7th Cir. 1984). Other federal courts of appeals, however, had reached the contrary conclusion. See, *e.g.*, *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1387 (11th Cir. 1988); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1062-63 (9th Cir. 1991).

The United States Supreme Court granted *certiorari* in the case of *Mastrobuono*, to resolve this conflict among the federal courts of appeals. While the claimant's appeal to the appellate court was pending in this case, the Supreme Court announced its decision in *Mastrobuono*, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212. Therein, the Court held, on facts very similar to those present here, that a NASD arbitration panel had the authority to award punitive damages, despite the presence of a New York choice-of-law provision in the contract.

In *Mastrobuono*, the petitioners opened a securities trading account with Shearson Lehman Hutton, Inc. (Shearson), by executing Shearson's standard-form client's agreement. That agreement contained an arbitration provision, providing that:

> "any controversy arising out of or relating to [the petition-ers'] accounts *** shall be settled by arbitration in accor-dance with the rules then in effect, of the National As-sociation of Securities Dealers, Inc., or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange as I may elect."

The agreement in *Mastrobuono* further provided that it was to be " 'governed by the laws of the State of New York.' " *Mastrobuono*, 514 U.S. at 58-59, 131 L. Ed. 2d at 85, 115 S. Ct. at 1217. The petitioners subsequently charged Shearson with mishandling their account and sought compensatory and punitive damages. The claims were submitted to arbitration before a NASD panel, which ruled in favor of the petitioners and awarded them both compensatory and punitive damages. Shear-son filed a motion in the United States District Court for the Northern District of Illinois to vacate the award of punitive damages. The district court granted the mo-tion (*Mastrobuono v. Shearson Lehman Hutton Inc.*, 812 F. Supp. 845 (N.D. Ill. 1993)) and the court of appeals affirmed (*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713 (7th Cir. 1994)). Both courts reasoned that

the agreement provided that New York law applied and New York law prohibits arbitrators from awarding punitive damages.

The Supreme Court reversed. The Court noted that contracting parties have the power to specify in the contract what issues are to be arbitrated. Thus, the parties may limit the issues to be arbitrated by waiving any claim for punitive damages. By the same token, the parties may agree to include claims for punitive damages within the issues to be arbitrated. The Court determined that the dispositive inquiry was therefore what the parties' contract said about the arbitrability of the petitioners' claim for punitive damages. In resolving this inquiry, the Court determined that the New York choice-of-law clause was not, in itself, an unequivocal exclusion of punitive damages claims. Further, the arbitration provision "strongly implie[d]" that an arbitral award of punitive damages was appropriate. The arbitration provision explicitly authorized arbitration in accordance with NASD rules, which gave the arbitrators broad power to award "damages and other relief," and a manual provided to NASD arbitrators specifically provided that arbitrators "can consider punitive damages as a remedy." The *Mastrobuono* Court reasoned that, "as a practical matter," it seemed "unlikely" that the petitioners had any idea that, by signing the standard-form agreement, they might be giving up the right to pursue punitive damages. The Court ultimately concluded that:

> "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastro-*

*buono*, 514 U.S. at 63-64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219.

Accordingly, the Court held, the arbitral award of punitive damages should have been enforced as within the scope of the contract. *Mastrobuono*, 514 U.S. at 64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219.

The respondents do not attempt to distinguish *Mastrobuono* from this case, nor do they dispute that it resolves the punitive damages issue ·in a manner contrary to that of the arbitrators in this case. The respondents nonetheless contend that *Mastrobuono* does not provide a basis for setting aside the arbitrators' ruling on the punitive damages issue. Arbitral awards, the respondents argue, are subject to only limited judicial review and may be set aside only on certain limited grounds. The respondents urge that the arbitrators' resolution of the issue of their authority to award punitive damages, even if erroneous in light of the Supreme Court's decision in *Mastrobuono*, constitutes simply a mistake of law that is not grounds for setting aside the award.

Resolution of this appeal thus turns on the proper standard of review to be applied to the arbitrators' decision on the punitive damages issue. The respondents are correct in their assertion that an arbitration panel's mistake of law will generally not provide grounds to set aside its decision on the merits of a dispute. It is well established that judicial review of an arbitral award is intended to be more limited than appellate review of a trial court judgment. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386 (1991); *Garver v. Ferguson*, 76 Ill. 2d 1, 8 (1979); *Merritt v. Merritt*, 11 Ill. 565, 567-68 (1850). A long line of precedent has established that an arbitrator's award will not be set aside because of errors in judgment or mistakes of law or fact. *Rauh*, 143 Ill. 2d at 391; *Garver*, 76 Ill. 2d at 7; *White Star Mining Co. v.*

*Hultberg*, 220 Ill. 578, 601-02 (1906). The rationale for this deferential standard has been explained as follows:

> " 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.' " *Garver*, 76 Ill. 2d at 9, quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99 (1855).

The claimant contends, however, that this deferential standard of review is not applicable in this appeal. She argues that the challenged decision of the arbitrators in this case addressed not the merits of her claim for punitive damages, but rather whether her punitive damages claims were arbitrable. "Arbitrability" refers to whether a particular claim or dispute is subject to arbitration under the parties' agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 131 L. Ed. 2d 985, 992, 115 S. Ct. 1920, 1923 (1995). Arbitration is a matter of contract and a party cannot be forced to arbitrate a dispute which the party has not agreed to submit to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 655, 106 S. Ct. 1415, 1418 (1986). Thus, the arbitrability question requires an interpretation of the parties' contract to determine if there was an agreement to arbitrate a particular dispute.

The standard of review applicable to an arbitrator's decision on a question of arbitrability differs from that applied to an arbitrator's decision on the merits of a dispute. In this case, the parties agree that we must apply federal law to questions concerning arbitrability

because the customer agreement "involves commerce" and is therefore governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (1988)). See *Gingiss International, Inc. v. Bormet,* 58 F.3d 328, 331 (7th Cir. 1995); *Bayma v. Smith Barney, Harris Upham & Co.,* 784 F.2d 1023, 1025 (9th Cir. 1986). The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983). Under the FAA and the case law interpreting it, the question of whether a claim is arbitrable is to be independently decided by the courts, unless the parties "clear[ly] and unmistakab[ly]" agree to allow the arbitrator to decide arbitrability. *First Options,* 514 U.S. at 943-45, 131 L. Ed. 2d at 992-94, 115 S. Ct. at 1923-25; *AT&T,* 475 U.S. at 649, 89 L. Ed. 2d at 656, 106 S. Ct. at 1418. Accordingly, where an arbitrator has addressed a question of arbitrability, unless the parties have agreed otherwise, the courts are to apply a *de novo* standard of review to that determination. *First Options,* 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924. Further, in reviewing an arbitrability question, courts are bound to apply the established federal policy favoring arbitration and to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Memorial Hospital,* 460 U.S. at 24-25, 74 L. Ed. 2d at 785, 103 S. Ct. at 941.

We agree with the claimant that the issue of whether the arbitrators had the authority to award punitive damages in this case was a question of arbitrability and, as such, is subject to *de novo* review. The Supreme Court's decisions in *Mastrobuono* and a subsequent case, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995), compel this conclusion. As noted, in *Mastrobuono,* the Court addressed the

same issue presented in this case, whether the inclusion of a New York choice-of-law provision in an arbitration agreement prohibited the arbitrators from awarding punitive damages. The *Mastrobuono* Court described this issue as "the arbitrability of petitioners' claim for punitive damages." *Mastrobuono*, 514 U.S. at 58, 131 L. Ed. 2d at 84, 115 S. Ct. at 1216. The Court then resolved the issue as a question of arbitrability. Applying the principle that ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration, the Court interpreted the parties' contract to determine if they had agreed to submit punitive damages claims to arbitration. *Mastrobuono*, 514 U.S. at 62, 131 L. Ed. 2d at 87, 115 S. Ct. at 1218, citing *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989). Thus, it is evident that the Supreme Court considers this issue to be a question of arbitrability.

The standard of review to be applied to this issue was clarified by the Supreme Court in *First Options*. In *Mastrobuono*, the Court expressly deferred resolution of the standard of review issue to *First Options*, in which it had recently granted *certiorari*. *Mastrobuono*, 514 U.S. at 55 n.1, 131 L. Ed. 2d at 83 n.1, 115 S. Ct. at 1215 n.1. In its opinion in *First Options*, the Court addressed the issue of the proper standard of review to be applied to an arbitrator's decision on arbitrability, referring to *Mastrobuono* as presenting such a question. *First Options*, 514 U.S. at 943, 131 L. Ed. 2d at 992-93, 115 S. Ct. at 1923. The Court held that where an arbitrator has decided a question of arbitrability, unless the parties clearly agree otherwise, the arbitrator's decision is subject to independent review by the courts, without deference to the arbitrator's decision. *First Options*, 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924.

Thus, in *First Options*, the Supreme Court implicitly determined that the issue presented in *Mastrobuono*, whether a New York choice-of-law clause precludes an arbitral award of punitive damages, was subject to independent review by the courts.

We note that the Seventh Circuit Court of Appeals has applied the Supreme Court's decision in *Mastrobuono* to reverse a district court holding that punitive damages were not available in an arbitration proceeding. Although not directly addressing the standard of review issue, the court of appeals implicitly held that the issue of whether the arbitrators could award punitive damages was a matter properly decided by the courts, rather than left to the arbitrators. See *Smith Barney Inc. v. Schell*, 53 F.3d 807, 809 (7th Cir. 1995).

Here, as in *Mastrobuono*, the issue presented is whether the claimant's punitive damages claims are arbitrable under the parties' agreement. The arbitrators determined that the claimant's punitive damages claims were not subject to arbitration under the agreement. This was not a determination of the merits of a dispute, but was a determination of the arbitrability of a dispute. The rationale of the federal courts for providing a judicial forum for resolution of arbitrability questions is that the arbitrator should not have the power to determine his or her own jurisdiction. *AT&T*, 475 U.S. at 651, 89 L. Ed. 2d at 657, 106 S. Ct. at 1419; *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 11 L. Ed. 2d 898, 903, 84 S. Ct. 909, 913 (1964); *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 96 (6th Cir. 1997). Here, in resolving the punitive damages issue, the arbitrators were called upon to determine the scope of their own authority. Federal law and policy therefore requires that the arbitrators' decision on this issue be subject to independent review by the courts.

The respondents do not contend that the parties in

this case agreed to allow the arbitrators to decide questions of arbitrability. The dissent nonetheless purports to find such an agreement in the use of the word "any" in the arbitration clause. The dissent's conclusion wholly ignores the Supreme Court's directives on this question. The dissent correctly notes that, in *First Options*, the Court recognized that contracting parties may agree to allow the arbitrator to decide questions of arbitrability. The Court went on, however, to explain that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944, 131 L. Ed. 2d at 994, 115 S. Ct. at 1924, quoting *AT&T*, 475 U.S. at 649, 89 L. Ed. 2d at 656, 106 S. Ct. at 1418. Because of the "significance of having arbitrators decide the scope of their own powers," the Court emphasized that the presumption will be that the parties did *not* agree to arbitrate questions of arbitrability. Thus, "silence or ambiguity" on the point will *not* be interpreted as giving the arbitrators that power. *First Options*, 514 U.S. at 943-45, 131 L. Ed. 2d at 992-94, 115 S. Ct. at 1923-24. The arbitration agreement in this case is, at best, silent on the question of who should decide questions of arbitrability. Under the clear mandate of *First Options*, we must therefore hold that the arbitrability question presented in this case is to be independently decided by the courts. See *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith*, 78 F.3d 474, 480 (10th Cir. 1996). The mere use of the word "any" cannot suffice to establish the "clear and unmistakable" evidence required by *First Options*.

The dissent also finds that a provision of the NASD Code evidences the parties' intent in this case to submit arbitrability questions to arbitration. Again, the dissent's superficial reasoning misses the mark. Section 35, the NASD Code provision relied upon by the dissent,

empowers the arbitrators to interpret the applicability of "all provisions under this Code." The cases cited by the dissent, *Bybyk*, *Freel* and *Sacharow*, used section 35 to find that the parties in those cases agreed to allow the arbitrators to decide whether NASD Rule 15 operated to time-bar certain claims for arbitration. See *Paine-Webber Inc. v. Bybyk*, 81 F.3d 1193, 1200-02 (2d Cir. 1996) ("[section 35 of] the NASD Code itself grants to the arbitrators the power to interpret and apply section 15"); *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994) ("In no uncertain terms, section 35 commits interpretation of all provisions of the NASD Code to the arbitrators"); *Smith Barney Shearson, Inc. v. Sacharow*, Nos. 234, 235 cons. (N.Y. December 4, 1997) (following *Bybyk* and *Freel* and holding that section 35 empowers the arbitrators to decide whether the Rule 15 time limitation is applicable). Thus, the only proposition these cases arguably stand for is that, when an arbitrability question requires interpretation of an NASD rule, section 35 empowers the arbitrators to decide that question. The arbitrability question presented here, whether a New York choice-of-law provision precludes the arbitrators from awarding punitive damages, does not hinge on the interpretation of an NASD rule. Section 35, and the cases applying it, therefore have no applicability in this case. Moreover, even if this section were applicable, we note that the interpretation of section 35 adopted in *Bybyk* and *Freel* has been rejected by other federal courts of appeal, including the Seventh Circuit Court of Appeals. See, e.g., *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 n.6 (7th Cir. 1992) ("we do not believe that [section 35] is a clear and unmistakable expression of the parties' intent to have the arbitrators, and not the court, determine which disputes the parties have agreed to submit to arbitration"); *Cogswell v. Merrill Lynch,*

*Pierce, Fenner & Smith,* 78 F.3d 474, 477 (10th Cir. 1996) (noting that *Freel* is one of a "substantial minority" of courts holding that the arbitrators have the power to decide if section 15 time-bars claims) (and cases cited therein). The dissent's position is thus entirely without merit.

The respondents contend that, even if the issue in this case is properly characterized as one of arbitrability, deferential review of the arbitrators' decision is still required because the issue involves "procedural arbitrability," not "substantive arbitrability." The Supreme Court has held that, while issues of "substantive arbitrability" are to be decided by the courts, issues of "procedural arbitrability" are generally to be left to the arbitrators. The Court has stated that, "[o]nce it is determined *** that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Wiley & Sons,* 376 U.S. at 557, 11 L. Ed. 2d at 909, 84 S. Ct. at 918. In *Wiley & Sons,* the procedural question the Court held should be left to the arbitrator was whether certain procedural prerequisites to arbitration, required by the parties' collective-bargaining agreement, had been satisfied. Other courts have held that the issue of a party's compliance with time limits for submitting a claim to arbitration is a procedural matter properly left to the judgment of the arbitrator. See, *e.g.,* *Local 285 v. Nonotuck Resource Associates, Inc.,* 64 F.3d 735, 739-41 (1st Cir. 1995); but see *Smith Barney Inc. v. Schell,* 53 F.3d 807, 809 (7th Cir. 1995) (whether claimants' arbitration claims are time-barred is to be decided by the courts).

Respondents argue here that the question of whether the New York choice-of-law clause precludes the arbitrators from awarding punitive damages is simply a matter

of procedure, which is therefore properly left to the arbitrators. We disagree. This issue addresses the scope of the arbitrators' authority and is therefore a matter independently reviewable by the courts. See *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith*, 78 F.3d 474, 476-77 (10th Cir. 1996); *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 (7th Cir. 1992) (defining the limits of arbitral jurisdiction is generally the function of courts, not arbitrators). Moreover, the Supreme Court's opinions in *Mastrobuono* and *First Options* reveal that the Court has determined this issue to be a question of arbitrability independently reviewable by the courts.

Accordingly, we find that, because the issue presented in this case is a matter of arbitrability, and the parties did not clearly agree to allow the arbitrators to decide arbitrability, the arbitrators' decision on this issue is subject to independent review by the courts. The appellate court therefore properly applied *Mastrobuono* to set aside the arbitrators' determination that the claimant's punitive damages claims were not arbitrable. The judgment of the appellate court affirming in part and reversing in part the circuit court's judgment and remanding with directions to the circuit court to order further NASD arbitration on the issue of punitive damages is affirmed.

*Appellate court judgment affirmed.*

JUSTICE HEIPLE, dissenting:

It is a fundamental rule of contract construction that a judge deciding a commercial dispute should first *read* the contract establishing the relationship between the parties and then—and only then—think great thoughts. In its misguided disposition of this case, the majority has put the proverbial cart before the horse: the majority opinion fails to recognize that parties to a contract may themselves provide that an arbitrator, and not a

judge, shall decide whether an issue is arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 131 L. Ed. 2d 985, 993, 115 S. Ct. 1920, 1923-24 (1995). Instead, in some ill-conceived attempt to do justice, the majority has decided to review *de novo* whether a given issue is arbitrable without first considering whether the parties agreed to submit the question to arbitration.

Did the parties agree to arbitrate questions of arbitrability, including the issue of whether the arbitrators had the power to award punitive damages? There are in fact two written agreements between the parties, a "Customer Agreement" and a "Cash Management Agreement," each of which contains the identical "Agreement to Arbitrate Controversies" clause:

> "Except to the extent that controversies involving claims arising under the Federal securities law may be litigated, it is agreed that *any* controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Directors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect." (Emphasis added.)

These provisions evidence the parties' intent to arbitrate all issues, including arbitrability. With the stated exception of federal securities claims, the language is all-inclusive, categorical, and unconditional. The word "any" is broad enough to encompass disputes over whether a particular claim is within the scope of arbitration. See 1 Oxford English Dictionary 539 ("In affirmative sentences ['any'] asserts concerning a being or thing of the sort named, without limitation as to which, and thus constructively of *every* one of them"). Thus, an objective reading of the parties' agreements leads inexorably to the conclusion that the parties intended to arbitrate issues of arbitrability.

Moreover, the plaintiff elected to submit the dispute

for arbitration with the National Association of Securities Dealers (NASD). The submission agreement provided that the parties "hereby submit the present matter in controversy *** to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the [NASD].[1] Section 1 of the NASD Code provides that the Code "is prescribed *** for the arbitration of any dispute, claim, or controversy" between members and their customers.

The NASD Code itself grants the arbitrators the power to decide issues of arbitrability:

"The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s)."

NASD Code of Arbitration Procedure, NASD Manual 3735. By adopting the NASD Code to govern their dispute, the parties further agreed to commit all issues, including issues of arbitrability, to the arbitrators. See

---

[1]Based on a superficial reading of *First Options*, the majority cavalierly declares that "[t]he arbitration agreement in this case is, at best, silent on the question of who should decide questions of arbitrability" and that the use of the word "any" in the agreement is not "clear and unmistakable" evidence of the parties' intent to arbitrate arbitrability. 181 Ill. 2d at 386. *First Options* indeed holds that courts may not assume that parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that the parties so agreed. *First Options*, 514 U.S. at 944, 131 L. Ed. 2d at 994, 115 S. Ct. at 1924, quoting *AT&T*, 475 U.S. at 649, 89 L. Ed. 2d at 656, 106 S. Ct. at 1418. But the precise issue decided by the Court in that case was whether a party (Kaplan) could be compelled to arbitrate personal claims when only his wholly owned investment company (MK Investments, Inc.), and not the party personally, signed the agreement to arbitrate. *First Options*, 514 U.S. at 941, 131 L. Ed. 2d at 991, 115 S. Ct. at 1922. Because Kaplan never signed an agreement to arbitrate, the Court held that Kaplan "did not clearly agree to submit the question of arbitrability to arbitration." *First Options*, 514 U.S. at 947, 131 L. Ed. 2d at 995, 115 S. Ct. at 1925.

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996); *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312-13 (8th Cir. 1994) ("The parties' adoption of this provision is a 'clear and unmistakable' expression of their intent to leave the question of arbitrability to the arbitrators").[2]

The emphatic, all-inclusive language of the arbitration clauses in the instant agreement and the parties' adoption of the NASD Code are not sufficient to persuade the majority of the parties' intent and commitment to arbitrate issues of arbitrability. The majority wants more. Here is more. When deciding whether the parties agreed to arbitrate a certain matter including arbitrability, courts should apply ordinary state-law principles that govern the formation of contracts. *First Options*, 514 U.S. at 944, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924. Here the parties' agreement and its enforcement is to "be governed by the law of the State of New York." The highest court in the State of New York has held that parties "clearly and unmistakably" agree to arbitrate arbitrability when the parties have agreed to resolve "any controversy" by arbitration in accordance with the rules of the NASD:

> "Coupled with the plain and sweeping language of the arbitration clause in the instant agreements and the analysis of the persuasive authorities, Section 35 of the NASD Code (now Rule 10324) buttresses our conclusion concerning the parties' intent and commitment to arbitrate the issue of arbitrability."

*Smith Barney Shearson, Inc. v. Sacharow*, Nos. 234,

---

[2]The majority feebly seeks to limit the holdings of *Bybyk* and *Freel* to instances where arbitrators are called on to interpret provisions of the NASD Code. However, the NASD Code by its own terms was promulgated to govern the arbitration of "any" dispute between the parties, including disputes over arbitrability, and thus section 35 clearly grants the arbitrators the power to decide arbitrability issues.

235 cons. (N.Y. December 4, 1997). Thus, under the relevant state law, the language of the arbitration agreement and the provision of the NASD manifest the parties' intent to submit the arbitrability issue to arbitration.

Thus, the parties agreed to relinquish their right to have a court decide the merits of their dispute, and instead expressly agreed to submit *all* questions—including arbitrability—to arbitration. A party may still ask a court to review an arbitrator's decision, but the court will set that decision aside *only* where the decision is tainted by corruption, fraud or misconduct, or amounts to a manifest disregard of the law. See *First Options*, 514 U.S. at 942, 131 L. Ed. 2d at 992, 115 S. Ct. at 1923; 9 U.S.C. § 10 (1994); 710 ILCS 5/12 (West 1996). The only issue left is whether the arbitrators interpreted the law in good faith; if they did, their interpretation—even if mistaken—is conclusive. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 391 (1991); *Garver v. Ferguson*, 76 Ill. 2d 1, 7-8 (1979); *Merritt v. Merritt*, 11 Ill. 565, 567-68 (1850). Here the arbitrators concluded in good faith that New York law precluded an arbitration panel from awarding punitive damages, and this conclusion was legally correct at the time of the arbitration award. Accordingly, the appellate court's judgment purporting to "remand" the cause for further arbitration should be reversed.

In affirming the appellate court, the majority has dramatically expanded the scope of appellate review of arbitration awards and, in so doing, has grossly misstated the law in at least three respects. (1) The majority writes that "the issue of whether the arbitrators had the authority to award punitive damages in this case was a question of arbitrability and, as such, is subject to *de novo* review." 181 Ill. 2d at 383. This is erroneous: if the parties agree to arbitrate issues of arbitrability,

"then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate." *First Options,* 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1923. (2) The majority states that "[h]ere, in resolving the punitive damages issue, the arbitrators were called upon to determine the scope of their own authority. Federal law and policy therefore requires that the arbitrators' decision on this issue be subject to independent review by the courts." 181 Ill. 2d at 385. Again, this is incorrect: the Federal Arbitration Act establishes an emphatic national policy *favoring* arbitration which is binding on all courts, state and federal. See *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy *** [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). (3) The majority holds that "[t]his issue [of punitive damages] addresses the scope of the arbitrators' authority and is therefore a matter independently reviewable by the courts." 181 Ill. 2d at 389. Wrong again: when, as here, there is "clear and unmistakable" evidence from the arbitration agreement that the parties intended that the question of arbitrability be decided by the arbitrators, the court *must* defer to the arbitrators' decision. *First Options,* 514 U.S. at 944, 131 L. Ed. 2d at 994, 115 S. Ct. at 1924.

In sum, the majority has misstated the law, misconstrued the facts and has undermined freedom of contract and the public policy favoring arbitration. Arbitration is a matter of consent, not coercion, and parties are free to write their arbitration agreements as they wish. The goal of arbitration is to avoid protracted litigation in the courts, and the parties to an arbitration agreement

bargain for this efficiency. By adopting a *de novo* standard of review, the majority has rendered private arbitration nothing more than an expensive precursor to traditional litigation, rather than an alternative means for resolving commercial disputes. I dissent.