**CREDIT ACCEPTANCE
CORPORATION,**
Plaintiff

v.

**Debra G. DAVISSON, Defendant.**

Case No.: 1:08 CV 107.

United States District Court,
N.D. Ohio,
Eastern Division.

June 30, 2009.

Martin C. Bryce, Jr. and Jesse N. Silverman, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, Kathleen A. Nitschke, Michele A. Smolin, Giffen & Kaminski, Cleveland, OH, for Plaintiff.

Jack A. Malicki, Elyria, OH, Thomas R. Theado, Gary, Naegele & Theado, Lorain, OH, for Defendant.

## ORDER

SOLOMON OLIVER, JR., District Judge.

Plaintiff Credit Acceptance Corporation ("Plaintiff" or "Credit Acceptance"), a Michigan corporation with its principal place of business in Michigan, filed a debt-collection action against Defendant Debra G. Davisson ("Defendant" or "Davisson"), an Ohio citizen, in the Lorain County Court of Common Pleas on August 27, 2007, seeking to recover $2,538.06. (N.D. Ohio, Case No. 1:08 CV 093, Notice of Removal Ex. A "State Court Compl." at 1, ECF No. 1–1.) Defendant filed her Answer on December 14, 2007, denying that she owed Plaintiff any money, and asserted state-law Counterclaims on behalf of herself and a putative class of other customers whose vehicles were repossessed by Plaintiff. (*Id.* Ex. B "State Court Countercl." at 3, 5, ECF No. 1–2.) Plaintiff removed the suit to this court on January 11, 2008. (*Id.* 1, ECF No. 1.) The court granted Defendant's Motion to Remand based on its conclusion that removal had been improper because it was initiated by Plaintiff, not Defendant. (N.D. Ohio, Case No. 1:08 CV 093, Order 1–2, 4, July 15, 2008, ECF No. 21.)

Before the court remanded Plaintiff's debt-collection action, Plaintiff brought this independent federal lawsuit (Case No. 1:08 CV 107) on January 14, 2008, which sought to obtain a declaratory judgment compelling the parties to submit their dispute to binding arbitration. (Compl. at 8, ECF No. 1.) Plaintiff filed a Motion to Compel Arbitration on January 17, 2008. (Mot. Compel Arbitration 1, ECF No. 5.) On April 11, 2008, Defendant moved to dismiss for lack of subject-matter jurisdiction or on abstention grounds, or, in the alternative, to stay the action pending disposition of the earlier-filed case. (Mot. Dismiss or Stay 1, ECF No. 13.) The court issued an order denying Defendant's Motion to Dismiss or Stay. (Order 2, Nov. 24, 2008, ECF No. 22.) The court determined that it had subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount-in-controversy requirement is met because an arbitrator could award Defendant more than $75,000 for her Counterclaims (*Id.* 6–11).

On March 11, 2009, Defendant filed a Second Motion to Dismiss for Lack of Subject–Matter Jurisdiction or for Reconsideration of Defendant's First Motion to Dismiss ("Motion for Reconsideration") (Mot. Reconsideration 1, ECF No. 38.) Defendant also filed a Motion to Stay Immediately All Proceedings on Plaintiff's Motion to Compel Arbitration pending the court's disposition of her Motion for Reconsideration ("Motion to Stay") on March 11, 2009. (Mot. Stay 1, ECF No. 39.) The ground for Defendant's Motion for Reconsideration is the Supreme Court's recent decision in *Vaden v. Discover Bank*, —— U.S. ——, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009).

Now pending before the court are: (1) Plaintiff's Motion to Compel Arbitration (ECF No. 5); (2) Defendant's Motion for Reconsideration (ECF No. 38); and (3) Defendant's Motion to Stay (ECF No. 39). For the reasons discussed below, the court denies Defendant's Motion for Reconsideration, denies as moot Defendant's Motion to Stay, and grants Plaintiff's Motion to Compel Arbitration.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts

On September 17, 2005, Defendant entered into a retail installment contract ("Contract") with Tri County Cars, Inc. ("Seller") to finance the purchase of a vehicle. (Compl. ¶ 12.) Shortly thereafter, Seller assigned the Contract to Plaintiff. (*Id.*) The Contract includes an arbitration clause ("Arbitration Clause"), which provides that "[e]ither [Defendant] or [Plaintiff] may require any Dispute to be arbitrated." (*Id.* Ex. B at 4, ECF No. 1–3.) The Arbitration Clause defines "Dispute" as "any dispute, controversy or claim between [Defendant] or [Plaintiff] arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under the Contract." (*Id.*) The Arbitration Clause further provides that:

> [Plaintiff] retain[s] the right to repossess the Vehicle upon [Defendant's] default and to exercise any power of sale under this Contract. The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies. If a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause.

(*Id.*) The Arbitration Clause also specifies that: it is governed by the Federal Arbitration Act ("FAA"); representative actions, such as class actions, are prohibited; and Defendant may reject the Arbitration Clause without affecting any other provision in the Contract. (*Id.*) Plaintiff never received notification from Defendant that she wished to reject the Arbitration Clause. (*Id.* ¶ 18.) Defendant does not dispute this fact.

As part of the Contract, Defendant agreed to make monthly installment payments to Plaintiff by the 15th day of each month. (*Id.* ¶ 14.) Plaintiff alleges that Defendant failed to make the September 15, 2006, payment. (*Id.*) As a result, Plaintiff repossessed Defendant's vehicle. (*Id.*) Plaintiff then auctioned Defendant's vehicle and applied the proceeds against Defendant's remaining debt. (*Id.*) Plaintiff alleges that, after application of the sale proceeds, Defendant owes an outstanding balance of $2,538.06. (*Id.*)

## B. Procedural History

In the Complaint currently before this court, Plaintiff states that it filed suit in the Lorain County Court of Common Pleas on August 27, 2007, to collect the outstanding balance from Defendant. (*Id.* ¶ 25.) On December 14, 2007, Defendant filed an Answer to the Complaint and filed Counterclaims on behalf of herself and the putative class of "all persons who entered into a retail installment contract for the purchase of a motor vehicle in Ohio which contract was assigned to [Plaintiff], and which vehicle was repossessed by [Plaintiff] on or after December 14, 2001." (*Id.* Ex. A at 3, 5.)

As a putative class member, Defendant asserts three Counterclaims against Plaintiff. (*Id.*) First, Defendant alleges that Plaintiff violated the Ohio Retail Installment Sales Act ("ORISA"), pursuant to Ohio Revised Code § 1317.12, and the Ohio Consumer Sales Practices Act ("OCSPA"), pursuant to Ohio Revised Code §§ 1345.01(A), (B)(10) and §§ 1345.03(A), (B)(1), (B)(6). (*Id.* 9–11.) The basis for this claim is that Plaintiff allegedly failed to notify Defendant that she was required to pay only $25.00 in repossession expenses to cure the default under the Contract, rather than the $310.00 sought by Plaintiff. (*Id.* 10.) Second, Defendant alleges that Plaintiff violated the Ohio Uniform Commercial Code ("OUCC"), pursuant to Ohio Revised Code § 1309.610, because Plaintiff's failure to notify Defendant of the $25.00 cure opportunity was commercially unreasonable. (*Id.* 11–12.) Last, Defendant asserts Ohio common law claims of conversion and trespass to chattel based upon Defendant's act of vehicle repossession. (*Id.* 12–13.) Defendant seeks actual damages, statutory damages, punitive damages, injunctive relief, and attorney fees. (*Id.* 17–22.)

Plaintiff seeks an order from this court compelling arbitration of the parties' issues. (Compl. at 8; Mem. Supp. Mot. Compel Arbitration 2, ECF No. 6.) Defendant asks the court to reconsider its order denying her Motion to Dismiss in light of the Supreme Court's recent decision in *Vaden v. Discover Bank.*, —— U.S. ——, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009). (Mot. Reconsideration 1.)

## II. MOTION FOR RECONSIDERATION

### A. Reconsideration Standard

The court notes that it has the authority to reconsider its Order denying Defendant's First Motion to Dismiss. As the Sixth Circuit has held, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir.1991) (internal citations omitted). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"); *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir.2001) ("The general rule regarding the power of a district court to rescind an interlocutory order is as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (internal quotations omitted). Rule 54(b) of the Federal Rules of Civil Procedure also reflects the court's authority to reconsider orders:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an ex-

press determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... which adjudicates fewer than all claims ... shall not terminate the action ... and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). In this case, the court's Order denying Defendant's First Motion to Dismiss was interlocutory in nature and, therefore, subject to revision at any time prior to entry of final judgment. In light of Defendant's argument that the Supreme Court's decision in *Vaden v. Discover Bank* dictates that her First Motion to Dismiss be decided differently, the court will entertain the Motion for Reconsideration.

### B. Subject–Matter Jurisdiction Analysis

Although the FAA is a federal law, it does not serve as a basis for federal-question jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court "which, save for such agreement, would have jurisdiction under Title 28 ... of the subject matter of a suit arising out of the controversy between the parties...." 9 U.S.C. § 4. Prior to the Court's decision in *Vaden,* the lower federal courts were split on how to interpret this provision. Some district courts interpreted "the controversy between the parties" as raising the issue of whether the court would have jurisdiction over the underlying controversy, whereas others viewed the issue as involving a dispute over the arbitrability of the parties' claims. *Compare Cmty. State Bank v. Strong,* 485 F.3d 597, 605–06 (11th Cir.2007) (looking through the § 4 petition and finding federal-question jurisdiction because the parties' underlying dispute involved federal-law claims), *with, e.g., Westmoreland Capital Corp. v. Findlay,* 100 F.3d 263, 267–69 (2d Cir.1996) (refusing to look through to the underlying federal-law claims and, consequently, finding that the district court lacked federal subject-matter jurisdiction to decide the § 4 petition).

The *Vaden* Court resolved this conflict by clarifying the extent to which it approves of the look-through approach: "A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." *Vaden,* 129 S.Ct. at 1273. The *Vaden* Court then explained that § 4 must be read "in light of the well-pleaded complaint rule and the corollary rule that federal [-question] jurisdiction cannot be invoked on the basis of a defense or counterclaim." *Id.* at 1278. The federal law issue must be present in the plaintiff's complaint; an issue of federal law found in a defense or a counterclaim does not establish federal-question jurisdiction. *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The *Vaden* Court then found that because there was no federal claim raised on the face of the plaintiff's complaint and that the only federal issue raised was by way of a counterclaim, there was no jurisdiction to hear the case. *Id.* at 1275–78.

■ Defendant argues that *Vaden* applies to the instant case and that the court should therefore reconsider its denial of her Motion to Dismiss for Lack of Subject–Matter Jurisdiction. (Mot. Reconsideration 1.) Defendant's arguments are not well-taken because Defendant has misread

*Vaden.* First, Defendant argues that *Vaden* held that, in a suit brought under § 4 of the FAA, federal subject-matter jurisdiction cannot be founded on a counterclaim asserted in the underlying action. (Mot. Reconsideration 2.) Defendant points to the *Vaden* Court's assertion that "federal jurisdiction cannot be invoked on the basis of a . . . counterclaim." 129 S.Ct. at 1278. Thus she argues that the court should not have included her Counterclaims when calculating the amount in controversy for diversity jurisdiction purposes in its order dated November 24, 2008. (Mot. Reconsideration 8.)

This argument is not well-taken for two reasons. First, *Vaden* does not apply to this case because the *Vaden* Court explicitly limited its holding to cases where the controversy underlying the § 4 petition involves *federal-question* jurisdiction. 129 S.Ct. at 1273. Second, Defendant takes the *Vaden* Court's statement that "federal jurisdiction cannot be invoked on the basis of a counterclaim" out of context. The Court listed that proposition as a corollary to the well-pleaded complaint rule, *id.* at 1278, when determining federal-question jurisdiction. When read in context, it is clear that the *Vaden* Court meant that *federal-question* jurisdiction cannot be invoked on the basis of a counterclaim because, in order for an action to "arise under" federal law, the federal-law issue must appear on the face of the complaint.

Defendant seeks to counter this conclusion by arguing that the *Vaden* holding is not limited to § 4 petitions with underlying disputes involving federal-question jurisdiction, because one of the cases cited by the Court in support of granting certiorari, *Smith Barney, Inc. v. Sarver,* 108 F.3d 92, 94 (6th Cir.1997), involved diversity jurisdiction. In that case, the Sarvers filed a claim for arbitration against Smith Barney alleging that it had violated federal securities laws. 108 F.3d at 93. In response,

Smith Barney filed a complaint in federal district court seeking to enjoin arbitration because the Sarvers' claim was not timely filed. *Id.* at 93–94. The district court granted summary judgment in favor of Smith Barney. *Id.* at 94. The Sarvers appealed, arguing that the district court lacked subject-matter jurisdiction over the case. *Id.* The Sixth Circuit held that the district court lacked federal-question jurisdiction over the case because: "the Federal Arbitration Act does not supply an independent basis for federal jurisdiction, nor does the federal nature of the underlying claims that were submitted to arbitration." *Id.* However, the Sixth Circuit affirmed the decision of the district court based on diversity jurisdiction. *Id.* It was the Sixth Circuit's refusal to "look through" to the underlying federal-law claims and find that federal-question jurisdiction existed that prompted the *Vaden* Court to cite and abrogate *Sarver.* The fact that the Sixth Circuit upheld the district court's decision on alternate grounds, i.e., diversity jurisdiction, does not expand the *Vaden* holding.

Second, Defendant supports her Motion for Reconsideration by arguing that the court already concluded that it lacked subject-matter jurisdiction when it granted her Motion to Remand the debt-collection action to state court. (Mot. Reconsideration 7.) The decision to remand the underlying dispute, however, has nothing to do with determining subject-matter jurisdiction over the § 4 petition currently before the court. The court granted Defendant's Motion to Remand because removal was improper. Plaintiff filed the Notice of Removal, but 28 U.S.C. § 1441 grants that power only to defendants. The conclusion that Plaintiff cannot remove a pending case to this court is completely separate from the conclusion that this court has diversity jurisdiction over Plaintiff's § 4 petition to compel arbitration.

Last, Defendant argues that *Vaden* clarifies an issue that the court found ambiguous when it rendered its order on November 24, 2008:

> In denying Defendant's earlier motion to dismiss, this Court noted that "the extent to which a counterclaim or a cross-claim can be considered in determining the amount in controversy never has been resolved satisfactorily by the federal courts." The Supreme Court in *Vaden* has now made manifest that a counterclaim "does not provide a key capable of opening a federal court's door."

(Mot. Reconsideration 7–8.) Again, Defendant takes these quotations out of context. After noting the ambiguity concerning how to calculate the amount in controversy in cases involving counterclaims and cross-claims generally, this court went on to say that, "it is well-settled that the amount in controversy in a petition to compel arbitration is the maximum value the arbitrator could award to one side or the other in the underlying dispute." (Order 7, Nov. 24, 2008.) In the specific context of petitions to compel arbitration, it is clear how to calculate the amount in controversy. Regarding the phrase Defendant cites from *Vaden,* the entire sentence reads, "Under the well-pleaded complaint rule, a completely preempted counterclaim remains a counterclaim and thus does not provide a key capable of opening a federal court's door." 129 S.Ct. at 1276. Read in context, it is clear that the *Vaden* Court meant that a counterclaim based on federal law cannot open a federal court's door *pursuant to 28 U.S.C. § 1331.* This reasoning does not apply to a determination of federal subject-matter jurisdiction under 28 U.S.C. § 1332 in the context of this case. Accordingly, for the reasons set forth above, the court denies Defendant's Motion for Reconsideration.

## III. MOTION TO COMPEL ARBITRATION

### A. Standard for Compelling Arbitration

As a threshold matter, the court must determine whether to apply federal or Ohio arbitration law to Defendant's claims that: (1) Plaintiff waived its right to compel arbitration by filing the state-court action and engaging in limited discovery; and (2) the Arbitration Clause is unenforceable under the Ohio Consumer Sales Practices Act and as a matter of Ohio public policy.

Plaintiff correctly argues that the Arbitration Clause is governed by federal law, the FAA. (Pl.'s Reply Br. 2–4, Dec. 29, 2008, ECF No. 25.) The Contract provides that "[t]he terms of this Contract are governed by the law of the state of the Seller's address shown on the front of this Contract [Ohio] except to the extent preempted by applicable federal law." (Compl. Ex. B at 4.) The FAA preempts state laws and policies regarding arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Moreover, the Contract itself provides that "[t]he Federal Arbitration Act governs this Arbitration Clause.... The Arbitration Clause is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq. ('FAA') and not by any state arbitration law." (*Id.*)

The court rejects Defendant's arguments that Ohio law applies for the following reasons. First, Defendant argues that the FAA does not apply here because Plaintiff did not invoke the Contract's preemption exception (Ohio law governs "except to the extent preempted by applicable federal law") in its Memorandum of Law in Support of Its Motion to Compel Arbitration. (Def.'s Opp'n Br. 2, Dec. 15, 2008, ECF No. 24.) But there is no need for Plaintiff affirmatively to invoke the pre-

emption exception; the *Keating* Court held that the FAA preempts state arbitration laws and the Contract itself clearly states that the FAA governs the Arbitration Clause.

Second, Defendant argues that Plaintiff itself believes that Ohio law governs because "Plaintiff has submitted Ohio case law as controlling in this action." (*Id.*) However, the court rejects this argument because Plaintiff cited Ohio case law merely to support its argument that *the FAA* requires arbitration of Defendant's claims. (Pl.'s Supplemental Mem. Supp. Mot. Compel Arbitration 2, ECF No. 17.)

Third, Defendant argues that the provision "[t]he Arbitration Clause is governed by the Federal Arbitration Act" is ambiguous; it could mean that the FAA governs the parties' arbitration, but not their disputes over arbitrability. (Def.'s Opp'n Br. 2.) Because it is ambiguous, Defendant argues, the court must construe the language against the drafter and find that Ohio law governs disputes over arbitrability. (*Id.* 2–3.) Defendant strains to find ambiguity where none exists. The plain language of the Contract provides that "[t]he Arbitration Clause is governed by the Federal Arbitration Act ... and not by any state arbitration law." (Compl. Ex. B at 4.)

Last, Defendant argues that "[t]he Sixth Circuit ... has found it 'a bit quixotic ... to apply federal law in [a] diversity case' when deciding arbitrability." (Def.'s Opp'n Br. 3.) Defendant quotes *World-Source Coil Coating, Inc. v. McGraw Const. Co.*, 946 F.2d 473, 476 n. 3 (6th Cir.1991), a case that is completely distinguishable from the instant case. In *WorldSource*, the parties' arbitration contract provided that arbitration would be governed by Illinois law. *Id.* The district court applied Illinois law in deciding the defendant's motion to compel arbitration; neither party argued that federal law ap-

plied. *Id.* Therefore, the Sixth Circuit found the dissenting judge's insistence on inserting a conflict of laws issue into the appeal to be a bit quixotic. *Id.* Here, the Arbitration Clause specifies that it is governed by the FAA; therefore, the court will apply federal law in deciding Plaintiff's Motion to Compel Arbitration. This result is required even though the court's subject-matter jurisdiction is based on diversity jurisdiction. " 'The issue of arbitrability under the United States Arbitration Act is a matter of federal substantive law.' ... [One should] therefore apply federal decisional law for the purpose of determining arbitrability." *Systran Fin. Services Corp. v. Giant Cement Holding, Inc.*, 252 F.Supp.2d 500, 506 n. 5 (N.D.Ohio 2003) (Carr, C.J.) (citations omitted).

Accordingly, federal law requires that courts "rigorously enforce agreements to arbitrate." *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (declaring a federal policy favoring arbitration) (internal citation omitted). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1990). The Sixth Circuit applies a four-part test to determine whether to grant motions to stay and compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; **second,** it must determine the scope of that agreement; **third,** if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and **fourth,** if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to

stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000) (emphasis added). Additionally, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Soler Chrysler–Plymouth,* 473 U.S. at 626, 105 S.Ct. 3346.

## B. Analysis

### 1. Agreement to Arbitrate

Defendant entered into the Contract with Seller on or about September 17, 2005. (Compl. Ex. B.) Shortly thereafter, Seller assigned the Contract to Plaintiff. (*Id.* ¶ 12.) The Contract contains an Arbitration Clause. (*Id.* Ex. B at 4.) The Arbitration Clause applies equally to Seller and Seller's assignee, Plaintiff. (*Id.*) The Arbitration Clause provides for the arbitration of any dispute between the parties arising out of the Contract. (*Id.*)

However, Defendant contends that Plaintiff may not exercise its contractual right to compel arbitration. (Def.'s Opp'n Br. 1.) First, Defendant argues that Plaintiff waived its right to arbitrate. Second, Defendant argues that the Contract is illegal because it violates Ohio's Consumer Sales Practice Act. Third, Defendant argues that the Contract is unenforceable because it is contrary to Ohio's public policy. (*Id.*)

### a. Waiver

■ Defendant argues that Plaintiff waived its right to arbitrate by filing suit against her in state court, an action that is inconsistent with the Arbitration Clause, and by engaging in discovery before seeking arbitration, which would prejudice her should the parties proceed to arbitration. (Def.'s Opp'n Br. 4–5.) A party may waive its right to arbitrate if it takes actions that are completely inconsistent with reliance on the arbitration agreement or if the party delays asserting its right to arbitrate to

such an extent that the opposing party incurs actual prejudice. *Barna v. Wackenhut Services, LLC,* No. 1:07–CV–147, 2007 WL 3146095, at *5 (N.D.Ohio Oct. 25, 2007). Given the federal policy favoring arbitration, however, a waiver of the right to arbitration is "not to be lightly inferred." *MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001). Therefore, the party seeking to prove waiver bears a heavy burden of proof. *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), *quoted in Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir.2003).

■ Defendant points to the Arbitration Clause (Def.'s Opp'n Br. 4), which provides that "You and we understand and agree that You and we choose arbitration instead of litigation to resolve Disputes." (Compl. Ex. B at 4.) Defendant argues that Plaintiff's act of filing a debt-collection suit in state court is inconsistent with this provision and that Plaintiff therefore waived its right to require arbitration of Defendant's counterclaims. (Def.'s Opp'n Br. 4.) In response, Plaintiff argues that its decision to file a debt-collection action in state court is consistent with the Arbitration Clause, when read in its entirety. (Pl.'s Reply Br. 5–6.) The Arbitration Clause provides that either party:

> may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit.... The

institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action.... If a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration.

(Compl. Ex. B at 4.) Plaintiff agrees that because the Arbitration Clause specifically contemplates that a demand for arbitration may be made after the institution of a court action, its conduct is not inconsistent with requirements of that Clause and; therefore, it has not waived its right to demand arbitration. (Pl.'s Reply Br. 6.)

Defendant asserts that these "weasel words" allow Plaintiff "to test, without limitation, [its] chances in litigation while supposedly preserving the right to later insist on arbitration should the litigation turn sour." (Def.'s Opp'n Br. 5.) However, the FAA's primary purpose is to ensure "that private agreements to arbitrate are enforced according to their terms." *Mastro-buono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (internal quotations omitted). For example, in *Household Realty Corp. v. Rutherford,* No. 20183, 2004 WL 1077369, at *6 (Ohio Ct.App. May 14, 2004), the parties' arbitration rider provided that use of the courts would not constitute a waiver of the right of any party, including the plaintiff, to submit any claim to arbitration. The Ohio Court of Appeals affirmed the trial court's ruling that Household Realty had not waived its right to arbitrate by filing a complaint against the Rutherfords. *Id.* at *1. Similarly, the court finds that the Plaintiff has not waived its right to arbitrate. Given that the Arbitration Clause contemplates a demand for arbitration being made after a lawsuit has commenced, Plaintiff's act of filing a debt-collection suit in state court is not necessarily inconsistent with reliance on the Arbitration Clause. This case does not involve factual circumstances where the plaintiff requested arbitration after attempting to litigate the defendant's counterclaims. Rather, Plaintiff sought to compel arbitration of its dispute with Defendant soon after learning of Defendant's Counterclaims, which are broad in scope.

Defendant also contends that Plaintiff waived its right to insist on arbitration because it engaged in discovery. Specifically, Defendant argues that she will be prejudiced should the court compel arbitration because she will not have reciprocal discovery rights in the arbitral forum. (Def.'s Opp'n Br. 7.) However, in *Paine-Webber, Inc. v. Faragalli,* 61 F.3d 1063, 1068–69 (3d Cir.1995), the Third Circuit noted that "waiver will normally only be found where the demand for arbitration came long after the suit commenced and when *both* parties had engaged in *extensive* discovery." (Internal quotations omitted) (emphasis added). "When only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice to the [opposing party]." *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 421 (5th Cir.1985); *MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 254 (4th Cir.2001).

Here, the discovery engaged in by Plaintiff was limited in scope. Plaintiff's single set of discovery requests were served on Defendant before she filed the counterclaims at issue. (Def.'s Opp'n Br. Disc. Resp. 1, ECF No. 24–1.) Plaintiff requested information and documents pertaining to Defendant's alleged outstanding balance. (*Id.*) If Plaintiff's Motion to Compel Arbitration of Defendant's counterclaims is granted, Plaintiff's debt-collection action must also be submitted to arbitration because the Arbitration Clause pro-

vides that "[i]f a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration." (Compl. Ex. B at 4.) Therefore, discovery pertaining to Defendant's alleged debt will be useful in arbitration because all the parties' claims will be arbitrated together. Accordingly, in light of the fact that Plaintiff's actions are not inconsistent with the language of the Arbitration Clause, and given that the limited discovery engaged in by Plaintiff will not prejudice Defendant and may be useful in discovery, the court finds that Plaintiff has not waived its right to arbitration.

### b. Illegal

Defendant argues that the Arbitration Clause is unenforceable because it violates Ohio's Consumer Sales Practice Act ("CSPA"). (Def.'s Opp'n Br. 9.) Defendant contends that requiring a consumer to waive his or her recourse to the courts is unfair, deceptive, and unconscionable and is also prohibited by the CSPA. (Id.) However, when the FAA governs an arbitration agreement it supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative. *Preston v. Ferrer*, 552 U.S. 346, 128 S.Ct. 978, 987, 169 L.Ed.2d 917 (2008). Moreover, the FAA declares that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Given that the CSPA does not apply to all contracts, it cannot be used to invalidate the Arbitration Clause. Moreover, Plaintiff did not require Defendant to waive her recourse to the courts. The Contract provided that "[i]f You don't want this Arbitration Clause to apply, You may reject it by mailing us at P.O. Box 5070, Southfield, Michigan 48086–5070 a written rejection notice which describes the Contract and tells us that You are rejecting this Arbitration Clause." (Compl. Ex. B at 4.)

Defendant argues that the Arbitration Clause also violates the CSPA because it bars the Ohio Attorney General from exercising one of the important consumer protection powers and duties entrusted to him by the CSPA. (Def.'s Opp'n Br. 10.) Defendant cites *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 161, 809 N.E.2d 1161 (Ohio Ct.App.2004), where the Ohio Court of Appeals noted that: "R.C. Chapter 1345 entrusts the Attorney General with important consumer protection powers and duties ... such as the dut[y] to make available for public inspection judgments and opinions of Ohio courts that determine that certain acts or practices violate R.C. 1345.02 through 1345.03." Defendant argues that the purpose of the Attorney General's Public Inspection File is frustrated if the File is not fully informed of the conclusions of private CSPA-enforcement suits. (Def.'s Opp'n Br. 11.)

However, the *Eagle* court also notes that "Chapter 1345 does not expressly preclude arbitration clauses in consumer sales contracts.... [And] arbitrating a CSPA claim does not deprive the claimant of any remedies prescribed by ... Chapter 1345." 157 Ohio App.3d at 162, 809 N.E.2d 1161. "[T]he United States Supreme Court has noted that statutory claims may be arbitrated so long as the claimant effectively may vindicate his or her statutory cause of action through arbitration." *Id.* (internal quotations omitted). Given that Chapter 1345 does not preclude arbitration clauses in consumer sales contracts, Defendant's argument that arbitration would frustrate the purpose of the CSPA to the point of rendering arbitration clauses in consumer sales contracts unenforceable is not well-taken.

### c. Against Public Policy

Defendant argues that Ohio courts have found arbitration agreements to be

unenforceable as contrary to public policy when, like the Arbitration Agreement in the instant case, such agreements contain class action waivers. (Def.'s Opp'n Br. 13.) Conversely, Plaintiff correctly notes that "the overwhelming majority of courts have enforced class action waivers ..." (Pl.'s Reply at 14, citations omitted). For example, Plaintiff states that Chief Judge Carr recently rejected Defendant's argument in *Price v. Taylor*, 575 F.Supp.2d 845, 854 (N.D.Ohio 2008):

> Price, lastly, alleges that the arbitration agreement is unconscionable because it limits her legal remedies, specifically the ability to bring a class action, join in claims with others, or act as private attorney general. Limitations on remedies in arbitration agreements are invalid if they violate a plaintiff's statutory rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). An agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies. *See Copeland v. Katz*, 2005 U.S. Dist. LEXIS 31042, 2005 WL 3163296 (E.D.Mich.) (finding class action waiver in arbitration agreement not unconscionable); *Pivoris v. TCF Fin. Corp.*, 2007 U.S. Dist. LEXIS 90562, 2007 WL 4355040 (N.D.Ill.) (compelling arbitration where plaintiff's right to act as private attorney general limited).

*See also Suschil v. Am. Fin. Serv., Inc.*, No. 07–2655, 2008 WL 974045, at *5 (N.D.Ohio April 7, 2008) ("The remedy of a class action lawsuit can be legally waived."). Moreover, the Ohio Court of Appeals in *Webb v. ALC of W. Cleveland, Inc.*, No. 90834, 2008 WL 4358554, at *3 (Ohio Ct.App. Sept. 25, 2008), also upheld the exact same Arbitration Clause at issue in this case. Accordingly, in light of the above authority, which this court finds persuasive, the court rejects Defendant's contention that the Arbitration Agreement's class action waiver is unenforceable as contrary to Ohio's public policy.

### 2. Scope of the Arbitration Agreement

■ Next, the court must determine the scope of the arbitration agreement. *See Stout*, 228 F.3d at 714. The Arbitration Clause provides that either Plaintiff or Defendant may require arbitration of "any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, ... [including] contract claims, and claims based on tort or any other legal theories [sic]." (Compl. Ex. B at 4.) Because the Arbitration Clause provides for the arbitration of *any* dispute, it is broad in scope.

The Sixth Circuit in *Solvay Pharms. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n. 10 (6th Cir.2006) (internal quotation marks and citation omitted), held that:

> [w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.... Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*See also Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n. 12 (6th Cir.2005) (stating "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.... If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms.") (citations omitted). District courts have the authority to decide, as a threshold matter, whether an issue is with-

in the scope of an arbitration agreement. *See Stout,* 228 F.3d at 714.

Here, Defendant's Counterclaims are clearly covered under the broad language of the Arbitration Clause. All of her Counterclaims relate to Plaintiff's efforts to collect amounts due under the Contract. More specifically, all of Defendant's Counterclaims arise out of Plaintiff's conduct in repossessing Defendant's vehicle in an attempt to cure her alleged default under the Contract. The Arbitration Clause provides that any dispute "arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract . . . . shall be fully resolved by binding arbitration." (Compl. Ex. B at 4.) Therefore, Defendant's Counterclaims clearly fall within the Contract's definition of "Dispute."

The Arbitration Clause also provides that "[i]f a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause." (*Id.*) In light of this language, Plaintiff must submit its claim for debt collection to binding arbitration. Plaintiff's claim also falls within the definition of "Dispute" because the debt-collection claim "aris[es] out of . . . the collection of amounts due under this Contract." Therefore, all of the parties' claims against one another fall within the scope of the Arbitration Clause. Accordingly, the court finds that all of the parties' claims are arbitrable.

### 3. Arbitrability of Federal Statutory Claims

The Sixth Circuit's third step in determining whether to grant motions to compel arbitration involves determining "if federal statutory claims are asserted" and if so, then the court "must consider whether Congress intended those claims to be nonarbitrable." *Stout,* 228 F.3d at 714. Here, because both Plaintiff's debt-collection ac-

tion and Defendant's three counterclaims are all state-law claims, this step is not applicable.

### 4. Stay

The last step of the Sixth Circuit's four-step test is to determine whether to stay the remainder of the proceedings pending arbitration. *See Stout,* 228 F.3d at 714. This step is inapplicable here because Plaintiff has not moved to stay litigation pending arbitration. Plaintiff seeks only a declaratory judgment in the nature of a petition to compel arbitration. There is no underlying action in this court. Moreover, the court has determined that all of the parties' claims are arbitrable. Therefore, once the court compels arbitration, no claim will remain that would need to be stayed.

## IV. CONCLUSION

For the reasons stated above, the court hereby grants Plaintiff's Motion to Compel Arbitration (ECF No. 5), denies Defendant's Second Motion to Dismiss Case for Lack of Subject–Matter Jurisdiction or for Reconsideration of Defendant's First Motion to Dismiss (ECF No. 38), and denies as moot Defendant's Motion to Stay Immediately All Proceedings on Plaintiff's Motion to Compel Arbitration (ECF No. 39).

IT IS SO ORDERED.