**In re: CHECKING ACCOUNT OVERDRAFT LITIGATION,**

**This Document Relates to: Johnson**

**v.**

**KeyBank National Association; S.D. Fla. Case No. 1:10–cv–21176–JLK W.D. Wa. Case No. 2:10–cv–304.**

**No. 09–MD–02036–JLK, MDL 2036.**

United States District Court, S.D. Florida. Miami Division.

June 16, 2010.

Mark A. Griffin, Karin B. Swope, Keller Rohrback LLP, Seattle, WA, Bruce S. Rogow, Robert C. Gilbert, Alter, Boldt, Brown, Rash, Culmo, Miami, FL, Edward Adam Webb, G. Franklin Lemond, Jr., Webb, Klase & Lemond, LLC, Atlanta, GA, Robert C. Josefsberg, Victor M. Diaz, Jr., John Gravante, III, Podhurst Orseck, P.A., Miami, FL, Barry R. Himmelstein, Michael W. Sobol, Jordan Elias, Mikaela Bernstein, Lieff Cabraser Heimann & Berstein LLP, San Francisco, CA, Ruben Honik, Kenneth J. Grunfeld, Golomb & Honik, PC, Philadelphia, PA, Ted E. Trief, Barbara E. Olk, Trief & Olk, New York, NY, Russell W. Budd, Bruce W. Steckler, Melissa K. Hutts, Baron & Budd, PC, Dallas, TX, for Plaintiffs.

Alan G. Kipnis, John M. Cooney, Arnstein & Lehr, LLP, Fort Lauderdale, TX, for Defendants KeyBank National Association.

## ORDER DENYING MOTION TO COMPEL ARBITRATION

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon KeyBank's Motion to Compel Arbitration (DE # 425) filed May 3, 2010. On May 20, 2010, Plaintiff Responded (DE # 493) and on June 1, 2010, Defendant Replied (DE # 530).

Currently the Court has ruled on six (6) previously filed Motions to Compel Arbitration. Five were denied (DE # 447) and one was granted (DE # 514). This Court's May 10th Order Denying Motions to Compel Arbitration and May 25th Order Granting the Motion to Compel Arbitration are incorporated into this Order by reference and the Court will not restate the factual background or legal basis for those Opinions.

In this Order the Court addresses: (A) whether Ohio or Washington law applies; and (B) whether the arbitration provision and its un-severable class action waiver are unconscionable under the applicable law.

## A. Choice of Law Analysis

■ The parties disagree on whether the state law of Ohio or Washington applies to the interpretation of this Agreement. Ohio law is the law specified by the Agreement. (Agreement at ¶ 26, Ex. A to Def. Mot. to Compel Arb. ("This Agreement and all Accounts shall be governed by the laws of the State of Ohio (without regard to conflict of law rules) and applicable federal law, but with respect to all fees and charges related to your Account, federal law alone controls.").) Washington law, on the other hand, is the law of the forum state; the case was filed in the Western District of Washington.

■ In a multi-district litigation case, the transferee court applies the choice of law rules of the state in which the action was filed. *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993) (citations omitted). The Court must therefore undertake a choice of law analysis under Washington law to determine whether Washington or Ohio law applies. *See James Russell Engineering Works, Inc. v. Clean Fuels, LLC,* No. C08–1427–MJP, 2009 WL 2406331 (W.D.Wa., August 3, 2009). Under Washington law, "choosing the applicable law is a two-part inquiry: first a court must determine whether there is an actual and meaningful difference between the potentially applicable laws; and second, a court must determine whether the parties' choice-of-law is actually effective." *Coneff v. AT & T Corp.,* 620 F.Supp.2d 1248, 1252 (W.D.Wash.2009).

First, "there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state...." *Id.* (citation omitted). Here, an actual conflict exists. As the court in *Coneff* noted, "there is a split of authority in this country over the enforceability of class-action waivers." 620 F.Supp.2d at 1253 (citing *Scott v. Cingular Wireless*, 160 Wash.2d 843, 161 P.3d 1000, 1004–05 (2007) (collecting cases)) (finding Washington law in contrast with Virginia, Illinois, and Alabama law which have all upheld arbitration clauses). Generally, Washington courts have invalidated class action waivers, whereas Ohio courts have upheld these waivers. *See e.g., Scott,* 161 P.3d at 1004–05; *Credit Acceptance Corp. v. Davisson,* 644 F.Supp.2d 948 (N.D.Ohio 2009). For example, a Washington court invalidated a class action waiver when applied to Washington's Consumer Protection Act (*Scott,* 161 P.3d at 1006), whereas an Ohio court upheld the waiver in connection with Ohio's Consumer Protection Act (*Credit Acceptance Corp.,* 644 F.Supp.2d at 958–59). Further, whereas Ohio law requires both substantive and procedural unconscionability to invalidate a provision, under Washington law a provision may be deemed unenforceable based solely upon substantive unconscionability. *See e.g., Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 908 N.E.2d 408, 412 (2009); *Coneff,* 620 F.Supp.2d at 1256. Thus, there is an actual conflict between Washington and Ohio law.

Regarding the second inquiry, the Court must determine whether the parties' contractual choice of law is effective. Washington follows the Restatement (Second) of Conflict of Laws. *Id.* Thus, under Washington law, a contractual choice of law provision is binding unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Laws § 187(2).

The exception outlined in Section (a) does not apply. Ohio has a substantial connection to the parties. Defendant Key-Bank is headquartered in the state of Ohio and deemed to be a citizen of Ohio. Thus, the Court must consider the complex inquiry required for the exception under section (b).

According to Washington law, section (b) requires a three part inquiry: (i) whether Washington law governs absent an enforceable choice of law clause; (ii) whether the contract would violate a fundamental public policy of Washington; and (iii) whether Washington has a materially greater interest in adjudicating the dispute than the other possible forum.

The first inquiry under section (b) is whether Washington law would apply absent the provision. *Coneff,* 620 F.Supp.2d at 1253. Washington courts have considered various factors when making this inquiry. *Id.* Courts have applied the 'most significant relationship' test which asks a court to consider "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the

contract, and (5) the domicile, residence, or place of incorporation of the parties." *Id.* (citations omitted). Here, the contract was negotiated, signed and performed in Washington. Plaintiff entered a Washington branch of KeyBank, signed a contract with a local, Washington KeyBank representative, and deposited and withdrew funds from a local, Washington KeyBank. (Dec. of David M. Johnson, Ex. 1 to Opp. to Mot. to Compel.) The statements and Notice of Arbitration were all sent to Plaintiff's Washington home and his domicile and residence is Washington. (*Id.*)

Defendant contends that the place of injury factor is not as important in a class action; rather, "the state in which the fraudulent conduct arises has a stronger relationship to the action." (Def.'s Reply at 7 (quoting *Coneff,* 620 F.Supp.2d at 1254).) Here, Defendant asserts that the alleged deceptive conduct, the implementation of KeyBank's nationwide overdraft policy, arose in Ohio. This argument fails based on the asserted facts of this case. The alleged fraudulent conduct occurred in Washington. All conduct related to Plaintiff's relationship with KeyBank, the only relationship currently at issue in this case, took place in the state of Washington. The Agreement outlining the overdraft fees at issue was signed in Washington, Plaintiff made the alleged overdrafts in Washington, and he was charged all overdraft fees in Washington. Although Defendant urges the Court to view the issue in terms of many, as yet, non-existent class members, the Court currently has only one named Plaintiff before it. Thus, the Court finds that Washington has the most significant relationship to this case and that Washington law applies absent the contractual provision.

The Court must next determine whether the arbitration provision (and its class ac-

tion waiver) violates a fundamental policy of Washington law. This is not an inquiry into whether this class action ban is unconscionable or whether a class action ban may be unconscionable under Washington law; rather, the Court must determine whether Washington has declared a strong public policy against class action waivers. The Court finds that it has.

■ Washington courts have found that Washington has a strong public policy in favor of class actions. *See e.g., Coneff,* 620 F.Supp.2d at 1255; *Scott,* 161 P.3d at 1007–08; *McKee v. AT & T Corp.,* 164 Wash.2d 372, 191 P.3d 845, 852 (2008). "Washington courts favor a liberal interpretation of CR 23 [Class Actions] as the rule avoids multiplicity of litigation, 'saves members of the class the cost and trouble of filing individual suits[,] and ... also frees the defendant from the harassment of identical future litigation.'" *Scott,* 161 P.3d at 1007 (quoting *Smith v. Behr Process Corp.,* 113 Wash.App. 306, 54 P.3d 665, 672–73 (2002) (alteration in original)). Thus, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action." *Scott,* 161 P.3d at 1008 (citations omitted). Moreover, while undergoing a similar choice of law analysis, the court in *McKee* explained Washington's public policy in favor of class actions: "Protecting parties in a position of weaker bargaining power from exploitation is among the types of fundamental public policy contemplated by [the Restatement]." *McKee,* 191 P.3d at 852. Under Ohio law, however, class action waivers can be upheld, contrary to Washington's strong public policy against these waivers. *See e.g. Credit Acceptance Corp.,* 644 F.Supp.2d at 959 ("[An] overwhelming majority of courts have enforced class ac-

tion waivers [under Ohio law]") (citations omitted). Thus, the Court finds that the second element of the Restatement, that there be a violation of a fundamental public policy, has been met.

Lastly, the Court must determine whether Washington has a materially greater interest in adjudicating this dispute than Ohio. The Court finds that it does. Washington has an interest in protecting its consumers who bank at Key-Bank and regulating a business that operates in its state. This interest is greater than that of Ohio which does not have the same interest in protecting Washington consumers. Thus, the Agreement's choice of law provision is not binding and the Court will apply Washington law to determine whether the arbitration provision of this Agreement is valid and enforceable.

## B. Unconscionability

■■■■ Under Washington law, a court may invalidate a provision of an Agreement if it is either substantively or procedurally unconscionable. *Coneff,* 620 F.Supp.2d at 1256 (citing *Scott,* 161 P.3d at 1006 n. 4). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract." *Schroeder v. Fageol Motors, Inc.,* 86 Wash.2d 256, 544 P.2d 20, 23 (1975). The Court finds that the arbitration provision of the Agreement is substantively unconscionable and therefore limits this analysis to substantive unconscionability. *See Scott,* 161 P.3d at 1006 n. 4 ("Because we find the class action waiver substantively unconscionable, we find it unnecessary to address plaintiffs' claims of procedural unconscionability.").

A Washington court found a similar class action waiver substantively unconscionable in *Scott,* 161 P.3d at 1006–07. In *Scott* the court explained that class actions are "often the only meaningful type of redress available for small but widespread injuries.... Without it, many consumers may not even realize that they have a claim." *Id.* at 1007. Further, the court explained that individuals are not likely to pursue these types of small claims because of the cost, time, energy and stress necessary to pursue such small claims individually. *Id.* at 1007. Thus, even though on its face a class action waiver does not exculpate a corporation from liability, "where the cost of pursuit outweighs the potential amount of recovery," a corporation is in effect exculpated. *Id.* The *Scott* court therefore found that the class action waiver "effectively prevents one party to the contract, the consumer, from pursuing valid claims, effectively exculpating the drafter from potential liability for small claims, no matter how widespread." *Id.*

Similarly, the class-action waiver in this Agreement, effectively shields Defendant from liability since the cost of pursuing arbitration on an individual basis outweighs the potential amount of recovery. Plaintiff's claims are for $39 overdraft charges which total only $555 in alleged damages. A class action is therefore the only means available to adequately redress this injury. "The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Id.* (quoting *Carnegie v. Household Intern., Inc.,* 376 F.3d 656, 661 (7th Cir.2004)). As addressed in the Court's previous Order Denying Motions to Compel Arbitration, an individual Plaintiff would likely be deterred from pursuing an individual action against a large bank for such a small

amount of possible recovery. Under the facts in this case, the Court finds that the potential costs of arbitrating a claim would deter potential plaintiffs from seeking to vindicate their rights in an arbitral forum.

Moreover, the confidentiality provision in this Agreement is one-sided and only benefits the Defendant. (Agreement at ¶ 25 (both parties must "keep confidential any decision of an arbitrator").) The court in *Zuver v. Airtouch Communications* found that a confidentiality provision, in an individual statutory context, "undermines an employee's confidence in the fairness and honesty of the arbitration provision and thus, potentially discourages that employee from pursuing a valid discrimination claim." 153 Wash.2d 293, 103 P.3d 753, 756 (2004). In this case, Defendant's one-sided access to information would similarly discourage a plaintiff from bringing a suit. KeyBank would have the benefit of knowing what happened in past arbitrations while Plaintiff would not. Defendant responds that the confidentiality provision is severable. Severing the clause, however, would not affect Plaintiff's incentive to bring a suit. Even if future plaintiffs could learn the outcome of this arbitration, Plaintiff would still be denied information regarding previous arbitrations. Plaintiff would therefore still not have access to the same information as Defendant, even if the clause was severed from this particular Agreement and Plaintiff would continue to be discouraged from bringing a suit.

Defendant asserts that this clause is not substantively unconscionable because (i) Defendant will pay part of Plaintiff's arbitration costs; (ii) Washington's Consumer Protection Act ("WCPA") provides for mandatory prevailing plaintiff's attorneys fees; and (iii) Plaintiff could have opted out of the arbitration provision.

The Agreement states that:

> At your written request, we will pay all fees up to $100.00 charged by the arbitration administrator for any Claim(s) asserted by you in the arbitration, after you have paid an amount equivalent to the fee, if any, for filing such Claim(s) in state or federal court (whichever is less) in the judicial district in which you reside.... If you are required to pay any fees in excess of $100.00 to the arbitration administrator ("additional fees") we will consider a request by you to pay all or part of the additional fees. To the extent that we do not approve your request, the arbitrator will decide whether we or you will be responsible for paying any such additional fees.

(Agreement at 11.) Defendant is therefore not offering to cover all of Plaintiff's arbitration costs; rather, after a plaintiff has paid a fee of up to a $100, by written request, Defendant will reimburse Plaintiff $100 of that fee. A plaintiff, deterred by the costs of individual arbitration, would not decide to bring a claim for the promise of a $100 reimbursement. Defendant asserts that Plaintiff's costs for an arbitrator will be limited to either $125 (if the American Arbitration Association provides the arbitrator) or $250 (if the Judicial Arbitration and Mediation Services presides). Nevertheless, as discussed in this Court's previous Order, those limitations are up to the arbitrator's discretion and the possibility that a plaintiff would be charged more is enough to deter a plaintiff from bringing an individual claim. Further, there are other costs to arbitration, such as room fees, that Defendant's $100 reimbursement would not cover. The Court is unpersuaded by Defendant's argument that Plaintiff would be induced to bring an individual claim for only $555 in damages.

Similarly, while the WCPA does provide for mandatory prevailing plaintiff's attor-

ney's fees, this is not sufficient to induce a Plaintiff to bring an individual claim in these circumstances. Evaluating a class action waiver for a claim brought under the WCPA, the court in *Scott* explained that even with a prevailing plaintiff's attorney's fees provision the plaintiff's attorney is only paid if the plaintiff wins, whereas defendant's attorneys are paid regardless.[1] *See* 161 P.3d at 1007. Further, the court held that "[e]ven if all of the contingencies are met and attorney fees are awarded, the arbitrator may consider the amount in controversy in awarding fees. While technically the plaintiffs are not prevented from hiring an attorney, practically, attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money." *Id.* Further, the award of attorney's fees does not address the arbitration costs that the Plaintiff would be required to expend to bring the case. Even with the promise of attorney's fees, a plaintiff would still be disinclined to bring an individual claim under this Agreement.

Finally, Defendant asserts that the opt-out provision in the Agreement validates the arbitration provision. In his Declaration, Ray Freas[2] stated that an "Arbitration Statement Message" was sent to Plaintiff's home on June 30, 2004.[3] (Dec. of Ray Freas, Ex. 1 to Reply at 4.) This Message included the newly added arbitration provision and informed the account owner that he had until November 1, 2004 to reject the provision. (*Id.*)

The Court agrees with Defendant that generally an opt-out provision can affect whether an agreement is procedurally unconscionable. A court considering procedural unconscionability addresses the relative bargaining positions of the contracting parties. One factor to consider in an analysis of procedural unconscionability is whether the Plaintiff signed the Agreement on a take-it-or-leave-it basis. An opt-out provision may affect this analysis, as a contract is not offered on a take-it-or-leave-it basis if the Plaintiff has the option to reject the terms of the arbitration provision without any adverse consequences. *See Honig v. Comcast of Ga., LLC,* 537 F.Supp.2d 1277 (N.D.Ga.2008).

An analysis of substantive unconscionability, however, is different. To determine substantive unconscionability, a court addresses whether, in effect, the clause is too one-sided or harsh. Defendant asserts that the opt-out provision provides a plaintiff with the opportunity to access the courts by opting out of the arbitration provision. Thus, Defendant contends that the provision does not prohibit a plaintiff from vindicating his or her rights. The Court, however, finds this argument lack-

---

1. Under the Agreement at issue in *Scott,* a plaintiff may only recover attorney's fees if the Plaintiff is awarded the full amount of their demand. Here, the Agreement does not impose the same limitation on a plaintiff; nevertheless, the same principles apply. Defendant's attorneys are still guaranteed payment, whereas Plaintiff's attorney must win to be paid, and even then the amount is in the arbitrator's discretion.

2. The National Manager of Print and Statement Rendering at KeyBank.

3. Plaintiff disagrees with Defendant, stating in his Declaration: "I never recall a notice telling me KeyBank was adding an arbitration provision to my agreement.... I also do not recall ever agreeing to an arbitration provision of any dispute that would arise out of my deposit agreement." The Court will not resolve this factual dispute at this time because it finds that the opt-out provision does not affect its finding of substantive unconscionability in this action.

ing. The Court's determination that the potential costs of arbitrating a claim would deter potential plaintiffs from seeking to vindicate their rights is not affected by the fact that Plaintiff could have opted out *previously.* As discussed above, it may affect whether Plaintiff can contend he had no option but to agree to the waiver, but it does not affect whether Plaintiff would be deterred from bringing a claim under the terms of the Agreement now. In other words, the prohibitive costs of bringing an individual claim in arbitration are not ignored simply because Plaintiff was not forced to agree to them at the outset. Moreover, while Defendant cites to a myriad of cases that found an opt-out provision affected procedural unconscionability, none of Defendant's cases specifically found that an opt-out provision affects substantive unconscionability. *See e.g., Martin v. Del. Title Loans, Inc.,* No. 08–3322, 2008 WL 4443021 (E.D.Pa. Oct. 1, 2008) (finding plaintiff could not establish procedural unconscionability under Pennsylvania law in light of 15 day opt-out right); *Enderlin v. XM Satellite Radio Holdings, Inc.,* No. 06–0032, 2008 WL 830262 (E.D.Ark. March 25, 2008) (finding plaintiff could not establish procedural unconscionability in light of opt-out right). Therefore, the existence of an opt out provision does not affect the Court's finding of substantive unconscionability in this case.

In sum, based on the facts before this Court, this arbitration provision will have the practical effect of precluding consumers from bringing an action against Key-Bank and is therefore substantively unconscionable and invalid under Washington law.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is ORDERED, AD-

JUDGED and DECREED that KeyBank's Motion to Compel Arbitration (**DE # 493**) be, and the same is hereby, **DENIED.**